## SUPREME COURT.

### EDGAR W. VORIS agt. D. A. McCREDY and P. J. ARMOUR.

This case presents a scene of fancy stock operations between a note broker doing business in the city, but residing in the country, and his family physician and neighbor, also residing in the country. The transactions seem also to have taken place in full view, and under the very brow of "Gold Hill."

The plaintiff, as he alleged, (after some luminous amplifications by defendant McCredy,) was determined "to see what there was in Gold Hill," and requested the defendant McCredy to purchase for him 500 shares of stock in "Gold Hill Mining Company," at $3 per share, and upon which he advanced $125 to McCredy, and gave his note for the balance; that about five months afterwards he was presented with an account from McCredy as follows: "To cash paid for Gold Hill stock, September 1, 1854, $1,500. Interest to January 24, 145 days,

Voris agt. McCredy and Armour.

at 7 per cent., $42.29;" and alleged that there was no cash paid, and no such purchase made, and demanded that his advance money and note be refunded to him.

The defendants, it appeared, proved that a few days after the plaintiff made such request to purchase, the defendant McCredy purchased 500 shares of such stock in his *own name*, and for $2.62 1-2, instead of $3 per share, and not for cash, but on time, deliverable in "sixty days, seller's option," and not in fact delivered and paid for, till the 30th October, 1854, the last day of the option.

*Held*, that the defendant McCredy under such proof, could not charge the plaintiff with the price of those 500 shares, as an investment made on the plaintiff's account. Judgment to refund the money and surrender the note.

*New- York Special Term*, 1856.

THIS bill is filed to get rid of the consequences of an unfortunate speculation in Gold Hill stock, on the alleged ground of fraud and misrepresentation.

ROOSEVELT, Justice.   The plaintiff says, that he is a practicing physician in the town of New Rochelle, and from that circumstance it is presumed, would have the court to infer, although he does not aver it in express terms, that he is not versed in the ways of the stock exchange.   Whereas, the defendants, he says, although one of them, McCredy, has his residence in the country, are city note brokers doing business in Wall street.   The plaintiff and the defendant McCredy, it is also alleged, were in habits of social intimacy ; the former being not only the neighbor but the family physician of the latter, and as such making frequent visits, both friendly and professional to his house in the country.   On one of which occasions, in a summer evening in the month of August, 1854, the conversation, it appears, turned upon the state of the stock market ; and more particularly upon the probable advantage of a suggested investment or speculation in "Gold Hill Mining Company," of which McCredy said he had purchased for himself two thousand shares ; the market price being three dollars per share.   The doctor being thus given to understand that a pretty large operation in stock might be undertaken upon "a very small amount of money," after a few days' reflection and inquiry, and without any persuasion from McCre-

dy, concluded to try his fortune. He accordingly provided himself with the necessary "margin," as it is termed, of one hundred and twenty-five dollars, for a purchase of five hundred shares, and paid another visit to McCredy, determined as he said, "to see what there was in this Gold Hill." McCredy at his request, took the money and undertook to make the purchase at a price not exceeding three dollars per share. "The doctor, (says the witness,) in whose presence both the conversations took place, was there at McCredy's house about an hour," discoursing among other subjects, upon golden stock prospects, and evincing a high degree of confidence in regard to them, in which McCredy fully, and I think honestly concurred. Up to this point, whatever may subsequently have been the doctor's suspicions, there is no ground whatever in the evidence for a charge of fraud. The delusion, if any, was mutual. Both parties were alike self deluded or alike deluded by others.

Subsequently, however, McCredy in repeated conversations contrary, it is alleged, to the fact, informed the doctor that he had made the desired purchase at the rate agreed upon of three dollars per share. He went further, on the 24th of January, 1855, about five months after the first interview, he presented him a written account with a charge, "to cash paid for Gold Hill stock, September 1st, $1,500. Interest to January 24th, 145 days, at 7 per cent., $42.29." It now appears that there was no such "cash paid," and no such purchase made. And the plaintiff, therefore, claims that the money he advanced and also a subsequent small payment, should be refunded to him, and that his note given for the balance should be delivered up to be cancelled. To this claim, it is objected by the defendant, that on the 1st of September, 1854, a few days after Dr. Voris had requested the defendant to purchase for him as already stated, five hundred shares at three dollars per share or under, he, the defendant, did in fact purchase of Morgan & Co., that number of shares. But the purchase, it appears, was in his own name and for twenty-one instead of twenty-four shillings per share, and not for cash, but on time, deliverable in "sixty

days, seller's option," and not in fact delivered and paid for till the 30th of October, the last day of the option.

The purchase so made is clearly proved ; and the defendant alleges that it was made in execution of Dr. Voris' order—an allegation which although probably true, is not legally proved and is inconsistent with the account presented to Dr. Voris on which the note was given.   And the question is, under these circumstances, can McCredy now charge the doctor with the price of those five hundred shares, as an investment made on his, the doctor's account ?   It seems to me, he cannot; first, because it is at least doubtful whether a purchase at sixty days " seller's option," was within the authority delegated to him; secondly, because he is estopped by his own reports, both verbal and written, of the terms of sale, from saying that the contract instead of being for " cash," was an optional one on the part of the seller as to time, and at a rate of two and five-eighths, instead of three dollars per share ; and thirdly, because if not estopped from proving, he has not in fact proved, that the purchase which he made, so different from the one reported, was in truth a purchase for Dr. Voris, instead of himself, in whose name the contract was made.   His answer in that respect, although duly sworn to, and although containing a very natural explanation of the transaction, is not under the present system of procedure, such evidence in his own favor, as the court can act upon..   It may satisfy any mind, as it certainly does mine, that no moral wrong was intended, and that to throw the loss in this case on the defendant, when all the gain, had there been gain, would probably have gone to the plaintiff, is a great hardship ; yet viewing the matter judicially, I am compelled to decide that the defence is not established. Under the circumstances, however, and in the exercise of that discretion, which in equity cases the law confers upon the court, I deem it proper not to charge the defendants with either interest or costs.

Judgment to refund the two payments, and surrender the note.