(30 Misc. Rep. 270.)

### FARQUEHAR et al. v. WISCONSIN CONDENSED-MILK CO.

(Supreme Court, Special Term, New York County.    January 20, 1900.)

1. ATTACHMENT—MOTION TO VACATE—UNLIQUIDATED DAMAGES.
    Where the amount claimed for breach of contract is for unpaid commissions already earned, and for commissions which probably would have been earned during the remainder of the period covered by the contract, had the defendant continued to perform its part, an objection to a writ of attachment on the ground that the damages are unliquidated and uncertain should be overruled.

2. SAME—INSUFFICIENCY OF COMPLAINT.
    Where a complaint for breach of contract alleged that defendant acted in complete disregard of the contract obligations, its failure to state that defendants did not give the one-month notice of intention to dissolve the contract, as provided therein, was not ground for the vacation of an attachment issued in the action.

3. SAME—EX PARTE PROCEEDING.
    Since Code Civ. Proc. § 769, providing that a motion on notice cannot be made in the First department .(New York county) in an action triable elsewhere, does not apply to an ex parte proceeding, an ex parte attachment might properly be obtained in New York county in an action triable in Richmond county.

Action by James L. Farquehar and others against the Wisconsin Condensed-Milk Company.    Motion to vacate an attachment.    Denied.

Hitchins, Pillister & Moen, for the motion.
Burr & Delacy, opposed.

GILDERSLEEVE, J.    The motion is to vacate an attachment. The plaintiffs are residents of this city, and the defendant is a foreign corporation.    The parties entered into a contract by which plaintiffs were to sell defendant's condensed milk on an agreed commission.    The plaintiffs were to be sole agents for the sale of the entire product of condensed milk of the defendant.    The plaintiffs were to devote their whole time and best endeavors to the interest of the business.    The plaintiffs were also to dispose of the entire output of defendant's condensed milk, and as long as they did so dispose of the same, or were ready and willing to dispose of the same, they were to have exclusive control and right to sell the same.    It was also stipulated that, should defendant desire to abandon the production of condensed milk during the period of the contract, defendant was to give plaintiffs one month's notice.    This contract was made on June 20, 1899, and was to go into effect on July 3d, and continue for five years from that date.    The complaint alleges that plaintiffs built up a large business for the sale of defendant's said condensed milk, and that about October 1, 1899, they had earned in unpaid commissions about $2,500, and that the orders at that time were such that plaintiffs' commissions were amounting to at least $400 per week.    The complaint further alleges as follows, viz.:

"Had this defendant honestly and faithfully supplied the orders which these plaintiffs furnished to it, with the character and kind of condensed milk agreed to be furnished by defendant, these plaintiffs would have continued to secure for and deliver to defendant orders, at the same rates, as plaintiffs are

informed and believe, for the entire output of said defendant's factory during the entire period of the contract annexed hereto, and would have earned net commissions during said period of at least $15,000 per year, and a total for the entire period covered by said contract of at least $65,000."

The complaint further alleges that about October 21, 1899, after plaintiffs had secured for defendant orders for its condensed milk two months in advance of its capacity to fill, the defendant wrongfully took possession of the office and place of business of the plaintiffs, and offered to the plaintiffs salaried positions, which plaintiffs declined, and that the defendant refused to continue the contract or to allow plaintiffs to procure further orders, refused to pay the commissions already earned, and left plaintiffs without means to keep the offices which they had hired and prepared to carry on the business of selling defendant's condensed milk, as provided for in the contract. Whether or not defendant gave the one-month notice of its desire to terminate the contract does not appear, although the complaint does allege that defendant acted in complete disregard of the contract obligations, from which it is claimed that we should infer that such notice was not given. The complaint demands judgment for $65,000. The affidavits upon which, in addition to the complaint, the warrant of attachment was obtained, are made by the two plaintiffs, and merely assert that the plaintiffs, as the respective deponents are informed and believe, are entitled to recover said sum of $65,000, over and above all counterclaims known to the respective deponents, and refer to the complaint as setting forth the facts relied upon to procure the attachment.

It is urged on this application to vacate the attachment that the damages claimed are unliquidated, and the amount is so uncertain that the attachment should not stand. Attachments may issue in actions on contract for the recovery of unliquidated damages, when a proper disclosure of the grounds of the claim supplies practicable means for determining its amount. U. S. v. Graff, 4 Hun, 634. But an attachment will not be granted in a suit against a foreign corporation, where the amount of the damages claimed is so largely conjectural that they are incapable of ascertainment upon the face of the papers with reasonable certainty. White v. Machine Co., 24 Civ. Proc. R. 411, 34 N. Y. Supp. 797. The papers upon which an application for an attachment is founded, where the damages are unliquidated, must set forth the facts which establish the damages, as the amount of damages must be shown in order to entitle the plaintiff to an attachment. Such papers must allege, not simply the conclusion that the plaintiff has suffered damage by reason of the breach of contract set forth in the complaint, to an amount specified, but must state the facts from which such conclusion may properly be drawn. Westervelt v. Agrumaria Sicula Societa Anonima di Transporti Marittimi, 58 Hun, 147, 11 N. Y. Supp. 340. As I have above stated, the affidavits herein set forth no facts, but refer to the complaint as forming part of the affidavits. The only facts set forth in the complaint to show the probable amount of the unliquidated damages are that at the time of the alleged breach of contract the plaintiffs were earning $400 a week, and that they had orders in ex-

cess of the defendant's capacity to supply, being two months in advance of such supply. From this the plaintiffs figure their probable damage at at least $15,000 a year, and for the balance of the duration of the contract at $65,000, which estimate is well within the rate of the $400 a week actually being earned. In the case of Wakeman v. Manufacturing Co., 101 N. Y. 209, 4 N. E. 266, the court of appeals, by Earl, J., use the following language, viz.:

"It is frequently difficult to apply the rules of damages, and to determine how far and when opinion evidence may be received to prove the amount of damages. One who violates his contract with another is liable for all the direct and proximate damages which result from the violation. The damages must be not merely speculative, possible, and imaginary, but they must be reasonably certain, and such only as actually follow or may follow from the breach of the contract. They are nearly always involved in some uncertainty and contingency. Usually they are to be worked out in the future, and they can be determined only approximately upon reasonable conjectures and probable estimates. They may be so uncertain, contingent, and imaginary as to be incapable of adequate proof, and then they cannot be recovered, because they cannot be proved. But when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. It is not true that loss of profits cannot be allowed as damages for a breach of contract. Losses sustained and gains prevented are proper elements of damage. Future profits, so far as they can be properly proved, may form the measure of damage. As they are prospective, they must, to some extent, be uncertain and problematical, and yet on that account a person complaining of breach of contract is not to be deprived of all remedy."

I am inclined to think that the first objection to the attachment is not well taken.

The next objection is that the complaint itself shows that, under the contract, the plaintiffs were to have a month's notice, in case the defendant decided to cease the production of condensed milk during the period of the contract, which defendant was at liberty to do, and that the complaint fails to state whether or not such notice was given, and whether or not the defendant has decided to cease the production of condensed milk. The complaint, however, alleges, as we have seen, that defendant, in complete disregard of its contract obligations with these plaintiffs, and with the fraudulent purpose and intent of seizing and converting to itself the profits accruing by contract to these plaintiffs upon sale of defendant's goods, took possession of plaintiffs' place of business, unlawfully demanded that plaintiffs should turn over the said office and books and papers, and that they should cancel said contract, and accept salaried positions from the defendant in lieu and place thereof, and that, upon plaintiffs' refusal to cancel said contract, defendant refused to continue the same or recognize its validity, and carried away all the books and papers, refused to allow plaintiffs to solicit business for said defendant pursuant to the contract, and refused to recognize the contract, and deliberately broke and violated said contract, etc. It seems to me that these and the other allegations of the complaint are sufficient to warrant the overruling of the second objection to the attachment.

The third is that the case was commenced in Richmond county, while these papers are entitled in New York county. The plaintiffs,

however, made a motion simultaneously with this one to correct this oversight, and to allow the caption to be amended by striking therefrom the words "New York County," and inserting "Richmond County." There appears no good reason why the said amendment should not be allowed, and the plaintiffs' said motion is granted.

This motion having been granted, and the previous objections of the defendant having been overruled, we now come upon the final point raised upon this application to set aside the attachment, viz. the attachment was obtained in New York county, while the action was triable in Richmond county. Section 769 of the Code provides that a motion "on notice" cannot be made in the First department in an action triable elsewhere. The attachment, however, was obtained ex parte, and the statute does not here apply. See People v. Grant, 50 Hun, 245, 3 N. Y. Supp. 142. In that case the presiding justice of this department uses the following words, viz.:

"The supreme court of the state is one court, though having numerous justices and clerks, and any justice holding a court in any part of the state may make an order of the supreme court in any action, no matter in what county the venue may be laid, unless such order is required to be made on notice, except in certain cases regulated by special statutes. Therefore, the commitment in question being ex parte, application could be issued by any justice of the supreme court while holding a term of said court in any part of the state."

The question of the defendant's practice in making this motion, on order to show cause why the attachment should not be vacated, in New York county rather than in Richmond county, has not been raised here, and may be regarded as waived.

I am of opinion that this application to vacate the warrant of attachment should be denied, with $10 costs to abide the event. Settle order on notice.