### MAURER v. GRIMM.

(Supreme Court, Appellate Division, Second Department. June 5, 1903.)

1. MORTGAGES—MORTGAGEE IN POSSESSION—LIABILITY FOR RENTS—PREVENTING COLLECTION—MEASURE OF DAMAGES.

Defendant, a mortgagee, was permitted to take possession of mortgaged premises which prior thereto produced a monthly rental. After foreclosure, plaintiff, the mortgagor, brought suit to recover the rents for the eight months defendant was in possession, and which had not been credited on the indebtedness. The evidence tended to show that soon after taking possession defendant told many of the tenants to pay no more rent; that the tenants who had theretofore paid promptly were so influenced by defendant's action that the collection of rents became extremely difficult, and was subsequently abandoned. *Held*, that the measure of damages was what plaintiff lost by reason of defendant's conduct.

2. SAME—PRESUMPTION AS TO TENANCY.

The fact that the premises were fully tenanted when plaintiff surrendered possession raised no presumption in his favor that they remained so during the time defendant was in possession.

3. SAME—EXTENT OF DAMAGES—BURDEN OF PROOF.
　　The rental value of the premises could not be taken to raise a presumption as to the extent of plaintiff's damages, and the burden of proof as to the measure thereof rested with him.

4. SAME—INSUFFICIENCY OF EVIDENCE.
　　It was incumbent on plaintiff to show what and how many tenants were in the building, and whose rents defendant failed to collect, and without such proof a judgment in his favor was unsupported.

Appeal from Kings County Court.

Action by Ulrich Maurer against Peter Grimm. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed, unless plaintiff stipulates for a reduction of the judgment.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

William B. Hurd, Jr., for appellant.

John McG. Goodale, for respondent.

HOOKER, J. Plaintiff's wife died intestate on July 2, 1901, leaving the plaintiff and six children surviving her. At the time of her death she was the owner in fee of certain three-story frame buildings in the borough of Brooklyn, occupied for apartments and stores. The plaintiff was duly appointed administrator, and a large number of just claims were filed against the estate. At the time of her death the premises were incumbered by a mortgage of $11,500, which the defendant held, and which was overdue, and taxes for several years were unpaid. The plaintiff was unable to liquidate this indebtedness, and foreclosure of the mortgage was threatened. On or about October 1, 1901, while plaintiff was in possession of the premises and entitled to the rents and profits as tenant by the curtesy, the defendant threatened to foreclose the mortgage and have a temporary receiver appointed to collect the rents and profits, unless the plaintiff would agree to put the defendant in possession and allow him to collect them for the purpose of applying the same towards the payment of principal, interest, and taxes. This the plaintiff agreed to, and on the 1st of October, 1901, defendant went into possession for that purpose. On that day, and for several months prior thereto, all of the apartments had been occupied practically the whole time, and were producing a monthly rental of $119.50. Early in October, 1901, a foreclosure was commenced by this defendant, which resulted in a final sale of the premises on the 2d day of April, 1902. This sale was completed on the 6th of June, 1902, and brought enough to pay the mortgage, interest, taxes, and expenses in full, except the sum of $39.60, which was the amount of the deficiency. Plaintiff, however, was never credited by defendant with the amount of the rents he collected, or should have collected, between the 1st of October, 1901, and the 6th of June, 1902, and he brought this action to recover the sum of $956, claiming that during the eight months from the 1st of October, 1901, to the 1st of June, 1902, the defendant either had or should have collected that amount of money. It was admitted on the trial that the rental value was $119.50 per month. The jury rendered a verdict for $973, upon which

judgment was entered; and from the judgment and order denying a motion for a new trial, defendant appeals.

At the end of the plaintiff's case, the defendant moved to dismiss the complaint except as to the actual rents shown to have been collected, and stated that as to those amounts he was willing that a verdict be directed against him. This motion was denied, and he excepted. At the close of the whole case the motion was renewed, and it was denied, and the defendant again excepted.

The proofs show that the defendant employed an attorney, and he, in turn, a collector, to obtain the rents, and that there was paid over to him not to exceed $143.50. The plaintiff introduced evidence tending to show that soon after the 1st of October the defendant went upon the premises and personally told many of the tenants to pay no more rent. What his object was in doing this does not appear, but there is abundant evidence to support the conclusion of the jury that such was defendant's conduct, and it appears that this action of the defendant influenced many of the tenants in their refusal. So difficult had it become to collect the rents, by reason of this attitude of most of the tenants, that defendant's agents admit that after the 1st of January, 1902, they made no further efforts to collect rents. Prior to the 1st of October, it appears from the evidence, the tenants were in the habit of paying their rent without question to the agent of the plaintiff, and, prior to his wife's death, to her agent.

The court charged the jury that the defendant was the plaintiff's agent in collecting these rents, and that he was bound to act in good faith towards him, and use reasonable skill and diligence to collect the rents; and further charged that if the defendant, Grimm, did not use reasonable diligence in collecting these rents, or if he said to the tenants, "Do not pay the rents," then plaintiff is entitled to collect the full amount. To the latter portion of the charge defendant excepted. There was no proof in the case as to the number of tenants in the apartments after the 1st of January, 1902. The verdict of the jury was based upon the assumption that the premises were fully tenanted during the whole period of time during 1902.

We are of opinion that the judgment cannot stand. The measure of damages was what the plaintiff lost by reason of the actionable conduct of the defendant, and no presumption is to be indulged in in plaintiff's favor from the fact that the premises were fully tenanted on the 1st of October, and that they remained so until the 1st of June. Without proof of the number of tenants in the building during the period from January 1 to June 1, 1902, there was nothing upon which the verdict of the jury might be predicated.

It has been held that, in an action for conversion of promissory notes or negotiable instruments, the face value thereof is prima facie proof of plaintiff's damage (Booth v. Powers, 56 N. Y. 22; Western Railroad Co. v. Bayne, 75 N. Y. 1; Blumenthal v. Lewy, 80 App. Div. ——, 81 N. Y. Supp. 528); but the rule is different in relation to other classes of personal property. Even as to corporate stock, which approaches the character of bills and notes, it has been held that in the absence of proof as to value it is to be presumed that it has little or no value. Griggs v. Day, 158 N. Y. 1, 52 N. E. 692. If,

in actions for the conversion of the stock of corporations, the par value of the stock will not be taken as prima facie evidence of value, much less, in an action against an agent for his failure of skill and care in collecting rents, will the rental value of the premises be taken to raise a presumption as to the extent of the plaintiff's damages. The burden of proof as to the measure of damages, as well as to other issues, rests with the plaintiff, and he cannot meet the requirements of the rule in the absence of legal evidence.

It was incumbent upon the plaintiff to show what and how many tenants were in possession of the apartments, whose rents the defendant failed to collect; between the months of January and June, 1902, plaintiff's proof in this respect failed. We think, therefore, that the judgment was without legal evidence to support it, and it must be reversed and a new trial ordered, unless the respondent stipulates to reduce the judgment to the sum of $143.50, and interest since the date of the judgment, and costs, with a proportionate reduction in the allowance, in which case the judgment, as modified, is affirmed, without costs. All concur.

---

### In re ANDERSON'S ESTATE.

(Supreme Court, Appellate Division, Second Department.   June 5, 1903.)

1. ADMINISTRATORS—ACTION FOR DEATH—SETTLEMENT—ORDERS OF SURROGATE.

    Appeal from Surrogate's Court, Kings County.

In the matter of the administration of the estate of Martin Anderson. From an order of the Surrogate's Court made on petition of Martina Anderson, an infant, vacating an order permitting the administratrix to settle for $3,000 an action brought by her against the John N. Robins Company, said company appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

Edward P. Mowton, for appellant.
James C. Cropsey, for respondent.