MARK O. PRENTISS, Respondent, *v.* HENRY V. GREENE and THE H. V. GREENE COMPANY, INC., a Corporation Organized and Existing under and by Virtue of the Laws of the State of Massachusetts, Appellants.

First Department, November 5, 1920.

Attachment — foreign corporation doing business here liable to attachment — failure of plaintiff to show more than nominal damages — warrant of attachment vacated.

The property of a foreign corporation which has been duly authorized to do business in this State is liable to attachment.

In an action for breach of a contract relating to the financing of a corporation to be formed, evidence examined, and *held*, not to show a right to more than nominal damages, so that a warrant of attachment against the defendant's property should be vacated.

A warrant of attachment is not a common-law right but is a statutory provisional remedy and authorizes the taking of property before judgment, and where it is sought upon an unliquidated claim it must clearly appear by *prima facie* evidence at least that the plaintiff is entitled to recover the amount of damages which he demands. Where unliquidated damages are sought for a breach of contract they must be reasonably certain and definite in amount and not speculative or problematical or resting on conjecture.

APPEAL by the defendants, Henry V. Greene and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 27th day of September, 1920, denying defendants' motion to vacate a warrant of attachment.

The warrant of attachment is for $505,000, and the ground upon which it was issued is that the individual defendant is a non-resident of this State and that the defendant company is a foreign corporation. The motion to vacate the attachment was based on the original papers on which the attachment was issued and on an affidavit of the attorney for the defendants, who appeared for them specially for the motion. The affidavit consists of an argument on the facts and shows that the attachment had been levied on property of the defendant corporation at sixteen different places where it is transacting business in this State, and that it duly obtained a license to do business in this State prior to the commencement of the action.

The warrant of attachment is based on the summons and complaint and two affidavits, one made by the attorney for the plaintiff and another by one Waterhouse. The complaint contains three counts, all for damages for breaches of a contract in writing annexed to and made part of the complaint. The contract is in the form of a letter written by the defendant Greene to the plaintiff under date of April 9, 1920, which purports to have been signed at the bottom by the plaintiff below the signature of Greene. The letter refers to a conversation between the writer and the plaintiff and Messrs. Henry and Kinney on that date in relation to a proposed financing by the defendant company of the capital stock of the United States Clearing House of Foreign Credits, Inc., or

any other name of the corporation in the future. It states in substance that the understanding of the writer is that the plaintiff owned and controlled practically all of the capital stock to the extent of approximately $1,000,000 of said corporation and that the company *was being* organized under the laws of New York; that the plaintiff was desirous of making a contract with the defendant company to sell all of the preferred capital stock by an additional capitalization of $4,000,000 of preferred stock and 102,500 shares of common stock of no par value; that the plaintiff would, upon request, amend the records of the incorporation of the company so that its name would be as might later be decided on, and permit the issuance of $4,000,000 additional preferred seven per cent cumulative participating stock of the par value of $100 per share and the additional 102,500 shares of common stock of no par value; that the plaintiff agreed to furnish a board of directors of not less than twelve men of recognized financial standing who would be mutually satisfactory to the plaintiff and to the writer, and that the plaintiff was to furnish the writer with additional data as may seem necessary and proper to enable him to be fully advised of all the conditions necessary before making financial preparations for the sale of the stock; that all promotion letters were to receive the approval of the plaintiff; that under these conditions, the writer was willing to undertake the sale of the entire $5,000,000 of preferred stock and 50,000 shares of common stock of no par value on a basis to net the corporation a total sum of $4,750,000, and that the preferred stock was to be sold on a basis of 112 per cent of its par value, and that the writer was willing to proceed at once and work harmoniously with the plaintiff in all these matters to the end that, as soon as the plaintiff fulfilled the conditions specified, the writer would begin the sale of the stock, and that after the subscriptions for the stock were paid by the clients of the writer, he would remit to the plaintiff $95 on every share of preferred stock with one share of the common stock to be issued in the name of the subscriber and to be registered and transferred at such bank as the plaintiff might appoint; that all legal details in connection with the present corporation and its future affairs were to be performed by counsel selected jointly by the plain-

tiff and the writer; that in connection with this underwriting of the stock, " we will guarantee to cause to be subscribed the entire issue within five months after all incorporation papers, agreements with board of directors, etc., have been finalized, said subscription agreements to be received on an agreement certificate similar to that which we are now using in soliciting subscriptions for the First People's Trust, copy of which is hereto attached; " that it was further understood that the stock would be sold partly on a cash basis but mostly on a twenty monthly installment basis, and that while it was understood that " we " agree to dispose of and to cause to be subscribed the entire issue within the period of five months, it was also understood that a small percentage of the subscribers would fail to complete payments and that in such cases " we " agree to resell the stock and that the five-month period was not to apply to such resales; that as soon as the plaintiff fulfilled the conditions to be performed by him, the writer would furnish subscriptions that would net the plaintiff at least $50,000 during the ensuing thirty days, $100,000 during the next thirty days, and $150,000 during the third thirty days, until the whole amount has been fully subscribed and the proceeds turned over in cash to the corporation; that if these statements were satisfactory to the plaintiff " as to the fundamental parts involved in the proposed transaction," the writer would be glad to have the plaintiff affix his signature to the letter as the writer had done. It is alleged in the first count of the complaint that the defendant Greene wrote the letter and made the contract for himself and as president and in behalf of the defendant company; that no time was specified within which the agreement was to be performed and that thereafter the time for performance was extended by mutual consent of the plaintiff and the defendants without definite limitations; that after making the contract, the plaintiff entered upon performance of the conditions to be performed by him and upon the work of providing a board of directors for the corporation, and that while so engaged in the performance of the contract and within a reasonable time after it was made and before the time for performance as extended expired, and without prior notice to plaintiff, defendants on or about the 23d day of June, 1920, wholly repudiated the contract and

absolutely refused to perform it; that the plaintiff accepted said repudiation and refusal to perform as a final breach and termination of the contract, and by reason of the breach of the contract by the defendants and their refusal to perform the plaintiff has been damaged in the sum of $505,000. The second count alleges by reference all of the allegations of the first count and further that the plaintiff duly performed all of the conditions of the contract on his part to be performed and that on the 23d day of June, 1920, defendants wholly repudiated and absolutely refused to perform the contract. The third count realleges by reference all of the material allegations of the preceding counts, and further alleges that the plaintiff duly performed the conditions on his part to be performed excepting such as were waived by the defendants, and that the defendants influenced, persuaded, and procured certain persons who had consented to serve as directors of the company and whom they had accepted as satisfactory to withdraw their consents to serve as directors and deliberately interfered with and impeded the plaintiff in the work of securing a board of directors of the company, and caused their attorney to withhold final approval of the proposed papers for the reorganization of the company. Judgment is demanded for $505,000 with interest from June 23, 1920, and costs.

The affidavit of the attorney for the plaintiff sets forth the negotiations between the parties and the making of the contract; that thereafter the plaintiff procured the consent of eleven individuals to serve as directors and they were approved by the defendant Greene, acting for himself and the defendant corporation, as satisfactory, and thereafter the defendant Greene, acting for both defendants, influenced and persuaded four of the proposed directors to withdraw their consents to act as directors and induced and persuaded them not to serve and to become directors of another similar corporation, the stock of which was being underwritten by the defendants; that thereafter the defendants agreed to live up to the contract and requested the plaintiff to procure certain other persons as directors in place of those who had withdrawn their consents to serve; that plaintiff thereupon secured consents of certain others to serve as directors, and that while plaintiff was so engaged and without notice to him or fixing any time within

which plaintiff was required to complete the board of directors and to perform the agreement on his part, the defendant wrote the plaintiff under date of June 25, 1920, that the proposed board of directors secured by the plaintiff was not satisfactory and that the defendants would not perform the contract, and the plaintiff accepted the repudiation and refusal to perform as a definite and final breach of the contract; that in or about the middle of May, 1920, plaintiff caused to be assigned to himself and had thereafter and until June 25, 1920, in his possession and under his control all of the outstanding stock of the United States Clearing House of Foreign Credits, Inc., duly indorsed, and was willing, able and offered to use the same in such manner as to cause the company to take such action for a reorganization or the enlargement of the capitalization as the defendants' attorney should approve to accomplish the purposes of the contract, and caused his attorney to prepare such legal papers as would accomplish the purposes as outlined in the agreement and to alter and modify said papers and plans in form and in substance to accord with all of the suggestions of the attorney for the defendants, to whom such papers were duly submitted, but that the attorney for the defendants repeatedly delayed formal approval of same and instructed plaintiff's attorney to postpone such proposed corporate action, and that the postponement so occasioned continued until the time of said repudiation and refusal by the defendants to perform the contract; that the plaintiff was ready, willing and able at all times to perform all of the conditions and agreements of the contract to be performed by him; that the reasonable market or sale value of all of the outstanding stock of the United States Clearing House of Foreign Credits, Inc., on June 23, 1920, was not in excess of $20,000; that the plaintiff was to receive 52,500 shares without par value of the common stock of the company when reorganized; that the reasonable value of 52,500 shares upon the subscription and payment to the company of the purchase price of the full issue of preferred stock and the remaining 50,000 shares of common stock in an amount to net the company $4,750,000 as provided in the contract, would have been in excess of $525,000, and that " said sum of $505,000 " is due to the plaintiff over and above all counterclaims known to him and

that the defendants are jointly indebted to him in that amount. The affidavit of Waterhouse shows that for nine years he has been engaged in buying and selling stocks of corporations not listed on the New York Stock Exchange, and that in his opinion the 52,500 shares of the common stock which the plaintiff was to receive, if the other stock were sold on a basis to net the company $4,750,000, would be fairly worth and would be salable for $10 per share, or $525,000 in all, and that in estimating said value he has considered that, apart from an established earning power of the enterprise, which he assumed to be yet unproven, the controlling interest in the company with a cash capital of $4,750,000 would be worth in excess of ten per cent of the capital so controlled by the voting power of the plaintiff's majority ownership of the common stock, and that he has read the certificate of incorporation and the proposed reorganization or charter thereof prepared for the purpose of reorganization of or reincorporating said corporation and is familiar with similar enterprises and with the earning power of money used therein and is of the opinion that the use and control of $4,750,000 in cash in such an enterprise through the ownership of the majority of the voting stock of the company having such sum in its treasury would be an asset and property of great value, and that in his opinion the earning power of said sum of money in such an enterprise over and above the fixed dividend on the preferred stock could not well be less than five per cent on the capital employed, and that plaintiff's stock would not have been worth less than $10 per share.

*Joseph Dannenberg,* for the appellants.

*Joseph Day Lee* of counsel [*Alley, Lee & Voorhees,* attorneys], for the respondent.

LAUGHLIN, J.:

One of the points made by the appellants is that although the defendant corporation is a foreign corporation, it is immune from attachment for the reason that it has been duly authorized to transact business here. The point is untenable, for by section 636, subdivision 2, of the Code of Civil Procedure an attachment against a foreign corporation is expressly author-

ized, and a corporation has but one domicile, which is in the sovereignty under which it is incorporated. (*Shepard & Morse Lumber Co.* v. *Burleigh,* 27 App. Div. 99.)

Another point made by the appellants is that no damages other than nominal damages are shown, and that, we deem well taken. Assuming, without deciding, that the plaintiff has sufficiently shown a breach of contract, he has not shown any agreement with respect to the value of his services or any basis for a recovery therefor on a *quantum meruit.* His counsel concedes that the only basis shown for a recovery of damages is the value of the 52,500 shares of the common stock, without par value, in the company to be. reorganized or incorporated, which he claims was to be and should have been issued to him. He does not even show that the existing corporation, the capital stock of which he controlled when the contract was made and which he has since acquired, had ever transacted any business, or that it or the corporation to be organized could have transacted business profitably. He, therefore, fails to show that it is certain the stock would have had any market value. It is doubtful whether the facts shown would entitle him to recover more than nominal damages within the well-settled rule that where it is certain that damages have resulted from a breach of a contract and the only uncertainty is the amount, the jury, on the best evidence of which the case is susceptible, may determine and award damages. (*Wooldridge* v. *Shea,* 186 App. Div. 705; *Cramer* v. *Grand Rapids Show Case Co.,* 223 N. Y. 63; *Industrial & General Trust, Ltd.,* v. *Tod,* 180 id. 215; *Dyer* v. *Rich,* 1 Metc. 180; *Crichfield* v. *Julia,* 147 Fed. Rep. 65; *Sistare* v. *Olcott,* 15 N. Y. St. Repr. 248.) We do not, however, express an opinion as to whether the plaintiff may be entitled to have a jury award substantial damages, for the point we have to decide is not with respect to his common-law right to recover damages, but whether he has presented evidence of damages of sufficient certainty and definiteness to entitle him to the warrant of attachment for the amount in which it has been issued, or for a lesser amount to which it might be reduced. A warrant of attachment is not a common-law right but is a statutory provisional remedy and authorizes the taking of property before judgment, and where, as here, it is sought upon an unliquidated claim, it must clearly appear

by *prima facie* evidence at least that the plaintiff is entitled to recover the amount of damages which he demands. (Code Civ. Proc. § 636; *Delafield* v. *Armsby Co.*, 62 App. Div. 262; *Barbrick* v. *Carrero*, 184 id. 160; *Calmon Asbestos & R. Works* v. *Asbest- Und-Gummiwerke*, 141 id. 198; *Southwell* v. *Kingsland*, 85 id. 384; *Chazy Marble Lime Co.* v. *Deely*, 88 id. 150; *James* v. *Signell*, 60 id. 75; *Haskell* v. *Osborn*, 33 id. 127. See, also, *Fine* v. *Lyons*, 141 N. Y. Supp. 294; *Farquhar* v. *Wisconsin Condensed Milk Co.*, 30 Misc. Rep. 270; *Mallon* v. *Rothschild*, 38 id. 8; *Story* v. *Arthur*, 35 id. 244.) In the case at bar not only is the claim unliquidated, but there is no basis for any damages excepting opinion evidence which is uncertain and problematical and upon which a jury might award only nominal damages, and yet the warrant of attachment is for the amount which the affiant, Waterhouse, thinks would be the value of the stock, and his affidavit shows that his opinion is a mere conjecture based upon no fact tending to sustain it.

It is well settled in this jurisdiction that the unliquidated damages recoverable for a breach of contract must be reasonably certain and definite in amount and not speculative or problematical or resting on conjecture. (*Cramer* v. *Grand Rapids Show Case Co.*, *supra*; *Bobrick* v. *Mackenzie*, 192 App. Div. 594; *Broadway Photoplay Co.* v. *World Film Corp.*, 225 N. Y. 109; *Witherbee* v. *Meyer*, 155 id. 449; *Maurer* v. *Grimm*, 84 App. Div. 575.) As already observed, it is even more important that the damages should be shown with reasonable certainty to justify the taking of the defendant's property in advance of an adjudication. We are of opinion that the plaintiff has not shown that the stock which he claims should have been issued to him would have had any substantial market value.

It follows that the order should be reversed, with ten dollars costs and disbursements, and the motion to vacate granted, with ten dollars costs.

CLARKE, P. J., DOWLING, SMITH and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.