GEORGE C. SICKLICK, Respondent, *v.* MICHEL SCHASSEUR (Appearing Specially), Appellant, Impleaded with PITT & SCOTT, INC., and Others, Defendants.

First Department, December 2, 1927.

**Attachment — damage — sufficiency of allegation showing substantial damage — prima facie case must be made out by papers — action to recover damages for alleged fraud and deceit — papers on which attachment issued were insufficient.**

The papers on which the warrant of attachment was issued in this case in which the plaintiff seeks to recover unliquidated damages for fraud and deceit were insufficient to justify the court in granting a warrant, since they do not set forth *prima facie* evidence that the plaintiff is entitled to recover substantially the amount of damages claimed.

The theory of this action is that the defendant, through fraud and deceit, acquired plaintiff's business. The papers are insufficient since they fail to show the nature and extent of the business done by the plaintiff, which he claims the defendant fraudulently deprived him of, and since they do not show what business the plaintiff turned over to the defendants and the loss suffered by him. In fact, the bulk of the plaintiff's allegations are conclusions and where such allegations are not conclusions, the facts alleged are indefinite and uncertain.

APPEAL by the defendant, Michel Schasseur, appearing specially, from two orders of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 10th and 19th days of October, 1927, respectively,

denying two motions by said defendant to vacate and set aside a warrant of attachment.

*Edward W. Bourne* of counsel [*Alexander & Green,* attorneys], for the appellant Michel Schasseur, appearing specially, etc.

*Copal Mintz* of counsel [*Alexander Kahan,* attorney], for the respondent.

FINCH, J.   These are appeals by defendant Schasseur from two orders at Special Term, the first denying a motion to vacate the warrant of attachment upon the original papers, and the second order denying a motion to vacate the warrant of attachment upon affidavits submitted by the defendant.

Judged by the well-established rule that in order to sustain an attachment facts as distinguished from mere conclusions must be shown, we find that the plaintiff has failed to show that he suffered substantial damage.   Attachment is a summary remedy, property being impounded before judgment and the courts have often reiterated that a plaintiff must at the least set forth sufficient evidence in his attachment papers to make out a *prima facie* case showing substantial damage.   In *Prentiss* v. *Greene* (193 App. Div. 672) this court said: " A warrant of attachment is not a common-law right but is a statutory provisional remedy and authorizes the taking of property before judgment, and where, as here, it is sought upon an unliquidated claim, it must clearly appear by *prima facie* evidence at least that the plaintiff is entitled to recover the amount of damages which he demands " (and cases cited).

The claim of the plaintiff is for unliquidated damages in an action for alleged fraud and deceit.   In *Dudley* v. *Armenia Insurance Co.* (115 App. Div. 380), which was also a claim for unliquidated damages in an action for alleged fraud, this court, in scrutinizing the record for evidence as to the damages, said: " It further appears that the action being at best for unliquidated damages, there was not sufficient evidence thereof.   The papers alleged that the authorized capital stock of the corporation was $50,000, of which stock to the amount of $10,000 had been issued, of which the plaintiff's 25 shares represented the par value of $2,500.   It further appears that all the capital stock issued of $10,000 par value had been deposited as collateral upon a subsequent call for additional security upon notes of a preceding company, aggregating $9,000; that is to say, if plaintiff's claim as to value is true, $68,000 additional to secure $9,000.   The extravagance of the estimate destroys its probative effect.   There are no statements of fact from which a court in the exercise of judicial discretion could determine that the

value of these 25 shares was $17,000, or any other sum. Before an attachment can issue, there must be some facts set up upon which the court can exercise its judgment as to value and the amount for which the attachment should issue. As said by this court in *Delafield* v. *Armsby Co.* (62 App. Div. 262), ' It should be borne in mind * * * that it is only within a comparatively limited period of time that it has been possible to issue an attachment in an action to recover unliquidated damages. Hence, it is the duty of the court to give fair construction to the provisions of the Code, which properly require, before a man's property shall be taken in execution before judgment upon an unliquidated claim, that the papers shall contain evidence that the plaintiff has sustained the damages which he demands.' "

Examining the facts as to damage in the case at bar in the light of the foregoing authorities, we find that the claim of the plaintiff is that he was deprived of his business through fraud. To prove such damage plaintiff naturally would have to show what business he had, what business he turned over to the defendant, and what business he had lost, giving in each instance its value. Taking these up in order we find that after describing his business as that of buying iron and steel parts for automobiles and accessories in the United States and Canada and selling them to customers in Europe, the plaintiff states generally that he had a list of over three hundred customers and then gives the names of some seven, with the approximate amount of yearly business done with each. Turning to the manufacturing side, plaintiff then gives the names of some three manufacturers, out of twenty claimed, with whom plaintiff states he had an exclusive agency. Plaintiff then states that he had complete files with reference to the wants of his customers and a " great deal of valuable data concerning the entire industry and business," but without giving a single specific detail so that it is impossible to tell whether this data was valuable or worthless. Plaintiff then states that his business brought him an average income of $15,000 a year. The plaintiff then values this business at $75,000, though, based upon the foregoing facts, the plaintiff has set forth nothing upon which the courts could say that the business was worth that sum or any other sum. If the plaintiff's annual earnings were $15,000, why does that lead to a valuation of the business at $75,000? If, however, plaintiff urges a causal connection between the amount earned by plaintiff and $75,000 as the value of the business, then in thus valuing the business at $75,000, how much does plaintiff deduct therefrom for the value of his own services? Conceding that the plaintiff had certain complete files and certain data and did a business generally

of about $58,000 a year with seven foreign customers and that his income was $15,000 a year, it does not follow that his business was worth $75,000 or any other sum. To support this valuation of $75,000, plaintiff swears:

" My business was easily worth the sum of Seventy-five Thousand ($75,000) Dollars. The reasons that I state this are as follows:

" (a) I know of no controversies that existed at the time (or have arisen since) between me and my customers and/or dealers which would have reduced my earnings to less than $15,000 per year;

" (b) I know of no conditions existing in the trade and business or of any circumstances or facts which would have reduced my income to below $15,000 per year had defendants not taken away from me said business;

" (c) I have every reason to believe that were it not for the fraud and deceit practiced by defendants as hereinabove set forth and were it not for their misconduct, my earnings in said business after seven years of constant solicitation and dealing with my customers and dealers, would have continued to be certainly no less than $15,000 per year and in all likelihood substantially more."

But in the foregoing we find nothing but the plaintiff's conclusions. Plaintiff furnishes no corroboration but rests the amount of his income of $15,000 a year upon his own statement. The same is true of his European customers, neither of which facts could the defendant well check up in time for this motion. As to the third of the alleged facts given, namely, the three American manufacturers with whom plaintiff claims exclusive agencies, it appears that an agent of the defendant wrote to these three with the following results: As to the first, it appears that the plaintiff had some sort of an exclusive agency, which apparently he still has. As to the second, that plaintiff never had an exclusive agency and that he only gave the manufacturer one order and that apparently in his own name, after his business, according to his own claim, was turned over to the International Steel Products Corporation, the corporation alleged to have been formed to take over the business of the plaintiff, and as to the third the plaintiff never had an exclusive agency. In answer Mr. Sicklick says, in his replying affidavit: " Of course, deponent is not bound by any letters that the defendants may have received from manufacturers with whom deponent had dealt. The fact is that in January, 1927, I had agencies from about twenty manufacturers and distributors, and that will be proved at an appropriate time." The appropriate time to make proof of these facts was in applying for the writ of attachment. If two of the three exclusive agencies named deny any exclusive agency, what weight can be placed upon

plaintiff's statement as to his twenty exclusive agencies which he has not named, particularly when he makes no claim of agencies for any definite period or terms?

As to what business plaintiff turned over, if any, and which seems to have consisted of data as to certain previous orders and the filling of the same and certain addresses, it appears that the defendants have endeavored to have the plaintiff take the same away but as yet he has failed to do so. Plaintiff, moreover, fails to cite a single instance in which the defendants have carried on the business formerly done by plaintiff.

Plaintiff in his complaint alleges:

" *Twentieth.* By reason of his reliance upon the said representations of defendants, and by reason of the premises, plaintiff has permanently lost the whole or the greater part of his said former business, and by means of the said fraudulent scheme and acts in furtherance thereof, the defendants have deprived the plaintiff and have cheated and defrauded him of his said business; all to his damage in the sum of $75,000."

An allegation in the alternative is only as strong as the lesser allegation. Plaintiff does not attempt to specify what part of his business still remains. Plaintiff's business being personal, the only way plaintiff could lose it would be by competition and plaintiff did not attempt to show that defendants were seeking to compete with plaintiff in the business heretofore done by him. On the other hand, upon this record there are facts justifying a conclusion that plaintiff continued to take the orders of his own customers in his own name, even after he was under an obligation according to his own claim to take such orders in the name of the new corporation. For example, on June twenty-ninth and July second, when the corporation had been formed and plaintiff was traveling at defendant's expense, plaintiff returned to Paris bringing an order dated the second of July from one of his seven specified customers, but taken in the name of plaintiff himself as shipper. Also when the only one of the three specified manufacturers who did not deny the exclusive agency of the plaintiff replied to the letter asking corroboration, he wrote: " Mr. Sicklick is representing us in certain parts of Europe." These examples bear not only on the question of what has the plaintiff turned over, but on the question with which we are particularly now concerned, namely, what damage has plaintiff shown he suffered. More could be set forth, but enough has been shown to justify the conclusion that taking this record as a whole there clearly is not sufficient to justify a court in holding that the plaintiff has sufficiently shown damage in any substantial amount.

It follows that the orders appealed from should be reversed, with ten dollars costs and disbursements, and the attachment vacated.

DOWLING, P. J., MERRELL, McAVOY and PROSKAUER, JJ., concur.

Orders reversed, with ten dollars costs and disbursements, and motions granted, with ten dollars costs.