ELTON LEATHER CORPORATION, Appellant, v FIRST GENERAL RESOURCES COMPANY, Individually and Doing Business as OSCEOLA SHOE COMPANY INC., Defendant, and OSCEOLA SHOE COMPANY, INC., Respondent.

First Department, June 28, 1988

**APPEARANCES OF COUNSEL**

*Peter R. Silverman* of counsel *(Silverman & Skolnick, P. C.,* attorneys), for appellant.

*Ellen G. Zindler* for respondent.

## OPINION OF THE COURT

Ross, J.

This appeal presents us with the issue of whether a foreign corporation is entitled to have an attachment, issued pursuant to CPLR 6201 (1), vacated against its property, upon the basis that it has filed a postattachment, preconfirmation application to do business in New York State. We are informed by counsel that this is an appellate issue of first impression in this State.

During the period March 1987 through May 1987, in 18 separate transactions, Elton Leather Corporation (Elton) sold to Osceola Shoe Company, Inc. (Osceola) leather goods for a total sales price of $82,190.16.

While Elton is a New York corporation, manufacturing and selling animal hides, Osceola is a foreign corporation, located in Arkansas, and manufactures shoes. In 1987, Osceola was a subsidiary of First General Resources Company (First General), a foreign corporation, with its principal offices in Dallas, Texas.

After the subject goods were shipped and invoiced to Osceola by Elton, Osceola allegedly accepted those goods "without comment * * * and * * * refused to pay for [them]". Therefore, in July 1987, by summons and verified complaint, Elton (plaintiff) commenced an action, in the New York County Supreme Court, against First General and Osceola to recover the sales price of $82,190.16, plus interest, for the leather goods, mentioned *supra.*

Following service, on or about September 16, 1987, Osceola moved to dismiss the action against it, pursuant to CPLR 3211 (a) (8) upon the ground that the court did not have jurisdiction over it. In support of its motion, counsel for defendant Osceola, in an affirmation, dated September 15, 1987, stated the court lacked jurisdiction, since "Osceola is incorporated in the State of Arkansas [maintains] its offices in Arkansas and [does] no business within the State of New York as required by CPLR Section 302 for jurisdiction".

Prior to the determination of defendant Osceola's motion to dismiss, on or about January 8, 1988, plaintiff applied, pursuant to CPLR 6211, without notice to defendant Osceola, for an order of attachment of certain deerskin leather, which was owned by defendant Osceola, which was "in the possession of Johnstown Leather Company in Gloversville, New York". According to its moving papers, plaintiff contended it was entitled to an order of attachment, upon the basis that defen-

dant Osceola "is a foreign corporation not qualified to do business in the state" (CPLR 6201 [1]).

Furthermore, the plaintiff contended that since, based upon the evidence of defendant First General's report to the Securities and Exchange Commission (SEC) for the quarter ending September 30, 1987, both defendants First General and Osceola are in serious financial distress, it is imperative that an attachment issue, as, in the event defendant Osceola goes out of business, there is little likelihood that plaintiff will be paid for the leather goods. Our examination of the report to the SEC, discussed *supra,* indicates that defendant First General's current liabilities exceed its current assets by more than one million dollars and defendant Osceola: "has not made timely payment to two of its secured creditors, is not in compliance with certain covenants of its principal credit agreement, and payments to its unsecured creditors have been very slow".

Thereafter, by order dated January 13, 1988, an IAS court (Edward J. Greenfield, J.) signed an order of attachment, which permitted plaintiff to attach property of defendant Osceola in the amount of $93,970.46, which represented the amount of the claim ($82,190.16), plus interest, costs, Sheriff's fees, and expenses. Pursuant to the attachment order, the Sheriff of Sullivan County levied *(see,* CPLR 6214) upon 27,876 deerskins belonging to defendant Osceola.

As soon as defendant Osceola learned of plaintiff's attachment order, on January 19, 1988, it filed an application with the Secretary of State of New York for a certificate of authority to do business in New York. Within a week after filing this application, defendant Osceola moved, solely on the ground that it was now qualified to do business in New York, to vacate the attachment order. Plaintiff opposed. By order entered on or about January 26, 1988, the IAS court (Edward J. Greenfield, J.), vacated its order of attachment.

By order entered February 4, 1988, this court granted plaintiff's motion to stay the IAS court order, entered January 26, 1988, pending determination of this appeal.

The creditor's remedy "of attachment serves a dual purpose. First, it * * * [provides] security for * * * any money judgment which may be recovered by the plaintiff in the main action * * * Secondly, the remedy provides a predicate for the exercise of quasi-in-rem jurisdiction over a defendant" (29 NY Jur 2d, Creditors' Rights, § 16, at 387-388). In the instant case, we are concerned with the attachment's function to provide security for a judgment.

We stated in *Siegel v Northern Blvd. & 80th St. Corp.* (31 AD2d 182, 183 [1st Dept 1968]): "Attachment is a provisional remedy having as its object securing a debt by preliminary levy upon property of the debtor to conserve it for eventual execution. It is strictly a creature of statute and, therefore, because of its harsh nature and, it being in derogation of the common law, the courts have strictly construed the statute creating it in favor of those against whom it may be employed. *(Penoyar* v. *Kelsey,* 150 N. Y. 77.)".

Before 1977, attachment was available, if the defendant was a foreign corporation, even though such foreign corporation was doing business in New York, pursuant to a license *(Prentiss v Greene,* 193 App Div 672, 678-679 [1st Dept 1920]).

The Legislature "[i]n 1977 * * * completely overhauled" (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C6201:1, at 11) the CPLR's attachment article (L 1977, ch 860), as a result of an Office of Court Administration (OCA) memorandum *(see,* mem, 1977 McKinney's Session Laws of NY, at 2636-2637).

In its memorandum, OCA stated, in pertinent part *(id.,* at 2636-2637):

"This measure is designed to modernize * * * the provisional remedy of attachment, to accomplish two purposes:

"1. to assure the constitutionality of the attachment procedure, and

"2. to render the attachment procedure more workable * * *

"They [the revisions] strike a fair balance between defendant's right to due process and plaintiff's interest in preserving the utility of the attachment procedures".

Our review of the record in the instant case indicates that the IAS court exalted form over substance, when it vacated the attachment herein, upon the ground that defendant, a foreign corporation, had merely filed a postattachment application for authority to do business in New York, since we find that the court disregarded evidence of the obvious ploy of the defendant to defeat the plaintiff's attempt to recover money allegedly due.

No decision has been cited to us from an appellate court in this State, which holds that a foreign corporation, by simply filing a postattachment application to do business in New York, can ward off a plaintiff's application for an order of

attachment to obtain security to insure that a judgment will be satisfied.

After reviewing the decision of the United States Court of Appeals for the Second Circuit in *Brastex Corp. v Allen Intl.* (702 F2d 326 [1983]) which holds, in a diversity case, that a foreign corporation's postattachment, preconfirmation application to do business in New York removes the statutory ground for an existing attachment under CPLR 6201 (1), we reject that holding, since, in our opinion, that court misconstrued the legislative intent concerning CPLR 6201 (1) *(see,* OCA mem *op. cit.,* which indicates that it was intended that the 1977 revision of the attachment article would continue to protect the security interest of a plaintiff).

A subsequent decision of the United States Court of Appeals for the Second Circuit in *ITC Entertainment v Nelson Film Partners* (714 F2d 217 [1983]) more accurately interprets the legislative intent behind CPLR 6201 (1). In pertinent part, that Federal court states, at page 220 of its opinion: "New York's nonresident attachment statute is designed to serve two independent purposes: obtaining jurisdiction over and securing judgments against nondomiciliaries residing without the state. New York courts have long recognized that provisions for attachment against nonresidents are based on the assumption that '[t]here is much more propriety in requiring a debtor, whose domicile is without the state, *to give security for the debt,* than one whose domicile is within. Such a debtor, pending litigation, might sell his property, and remain at home, in which event he could not be reached by any of the provisional remedies or supplementary proceedings provided by [New York] laws' *Houghton v. Ault,* 16 How. Pr. 77, 84 (Sup. Ct.) (emphasis added), *aff'd,* 16 How. Pr. 87 (Sup. Ct. Gen. Term 1858)."

Significantly, in its moving papers to vacate the attachment order, defendant does not deny plaintiff's contentions, mentioned *supra,* that it received the leather goods for which it did not pay. In view of the fact that defendant has a pending motion to dismiss the complaint, upon jurisdictional grounds, and, therefore, has not submitted an answer, as of this date, defendant has offered no substantive defense on the merits to this action.

As discussed *supra,* the plaintiff claims, based upon a statement submitted by defendant First General to the SEC, that both defendants First General and Osceola are in financial

trouble. In order to attempt to rebut that contention, defendant Osceola has submitted a statement which sets forth its financial condition as of October 31, 1987. However, our examination of that statement indicates that it was not prepared by an independent auditor, and is purely self-serving.

Based upon our analysis *supra,* of the facts in the instant case, we find that the weight of the evidence indicates that defendant's postattachment application to do business in this State was a sham; and, therefore, we further find that the IAS court erred in vacating the order of attachment.

In conclusion, we hold that a foreign corporation, who simply files a postattachment, preconfirmation application to do business, cannot, by that act alone, cause an order of attachment to be vacated.

Accordingly, order, Supreme Court, New York County (Edward J. Greenfield, J.), entered January 26, 1988, which granted defendant's motion to vacate an order of attachment, is unanimously reversed, on the law and the facts, motion is denied, and the order of attachment is reinstated, with costs.

KUPFERMAN, J. P., CARRO, ROSENBERGER and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on or about January 26, 1988, unanimously reversed, on the law and on the facts, the motion is denied, and the order of attachment is reinstated. Appellant shall recover of respondent $50 costs and disbursements of this appeal.