**GIORGIO MORANDI, INC., Plaintiff,**

v.

**TEXPORT CORPORATION, China Crown Investments Ltd., and Exim Lines, Inc., Defendants.**

No. 88 Civ. 4780 (DNE).

United States District Court, S.D. New York.

Oct. 21, 1988.

Eisenberger, Golden & Fox (Leo Fox, New York City, of counsel), for plaintiff.

Salon, Marrow & Dyckman (Robert V. Marrow, New York City, of counsel), for defendant China Crown Investments, Ltd.

## OPINION & ORDER

EDELSTEIN, District Judge:

On July 11, 1988 this court, upon application of the plaintiff, Giorgio Morandi, Inc. ("Morandi"), signed an *ex parte* order attaching 12,000 ladies' woven jackets in the custody of the United States Customs and the Port Authority of New York and New Jersey. On August 5, 1988 the plaintiff, pursuant to Fed.R.Civ.P. 64 and New York Civil Practice Law and Rules ("CPLR") 6201 *et seq.*, moved for an order confirming the attachment. On August 18, 1988, the defendant, China Crown Investments Ltd. ("China Crown"), cross-moved for an order vacating the July 11 attachment. For the following reasons the court confirms the attachment.

## BACKGROUND

Morandi is a New York corporation engaged in the importation and sale of apparel merchandise in the United States. China Crown is a Hong Kong trading company, with offices in Hong Kong and the Philippines, that sells finished garments to New York customers, among others. At the time of the attachment, China Crown was not authorized to do business in New York state. In August 1988, however, China Crown filed an application with the New York Secretary of State for authorization to conduct business in New York.

The underlying transaction that forms the basis of this lawsuit is the sale by China Crown to Morandi of 12,000 ladies' woven jackets and 12,000 boys' denim jackets. Although some of the facts are in dispute the contours of the transaction can be summarized as follows. On November 18, 1987, two purchase orders providing for delivery on or before December 28, 1987 were executed for a total of 12,000 boys jackets ("boys jackets"). *See* Affidavit of Maurice Cohen, President of Morandi, in Opposition to Cross–Motion ("Cohen Affidavit") Exs. B, C. On November 18, 1987, two purchase orders were executed providing for delivery on or before January 10, 1988, for 7,200 ladies' jackets ("ladies' jackets"). Cohen Affidavit Exs. J, K. On December 7, 1987, 4,800 additional ladies' jackets were ordered, with delivery to be made by February 28, 1988. Cohen Affidavit Exs. L, M.

These agreements were apparently amended because of production delays and problems with quality control. Plaintiff originally arranged for a letter of credit to cover the sale of the boys jackets that listed December 28, 1987 as the latest shipment date. This letter of credit was amended to provide for latest shipment of the boys jackets and 4,800 ladies' jackets on January 31, 1988. The second letter of credit for the remaining 7,200 ladies' jackets provided for latest shipment by February 5, 1988. China Crown has conceded that shipments were made on February 8, 1988. *See* Affidavit of Joseph Lau Fan Lan in Opposition ("Lan Affidavit") ¶ 11 at 6.

A. Basis for Pre–Judgment Attachment

■ Rule 64 of the Federal Rules of Civil Procedure provides that the district court must employ the provisional remedies of the state in which the court sits. CPLR 6201 *et seq.* sets forth the state law relevant to attachments in this district. CPLR 6201(1) provides in relevant part that an order of attachment may be granted when

"the defendant is ... a foreign corporation not qualified to do business in the state."

China Crown, citing *Brastex Corp v. Allen International Co., Inc.,* 702 F.2d 326, 332 n. 12 (2d Cir.1983), contends that this basis of jurisdiction no longer supports an attachment in this case because it has applied for authorization to do business in New York. In *Brastex,* the Second Circuit ruled that an attachment could not be confirmed under CPLR 6201(1) if an authorization to conduct business had been obtained at any time after the attachment.[1] Although this rule may have been the law of this circuit before the New York state courts had spoken, such is no longer the law in New York.

In 1988, the Appellate Division, First Department directly addressed the issue presented in *Brastex* and reached an opposite conclusion. *Elton Leather Corp. v. First General Resources Co.,* 138 A.D.2d 132, 529 N.Y.S.2d 769 (1st Dep't 1988). In that case, the court held "that a foreign corporation, who simply files a post-attachment, pre-confirmation, application to do business, cannot, by that act alone, cause an order of attachment to be vacated." *Id.* 529 N.Y.S.2d at 772. It is clear that *Brastex* is no longer valid law. Moreover, it is the view of this court that the reasoning of *Elton* more faithfully advances the purpose underlying CPLR 6201(1), namely to provide security for a debt by a nondomiciliary. A post-attachment application for authorization to do business in the state is an obvious attempt at circumventing the spirit and purpose of CPLR 6201(1). Accordingly, the court finds that CPLR 6201(1) provides a valid basis for attachment in this case.

B. *Probability of Success on the Merits*

■ To prevail on a motion to confirm an attachment, the plaintiff must state a cause of action and demonstrate that it will probably succeed on the merits.[2] CPLR 6212(a), 6223(b); *Phillip Bros. v. El Salto S.A.,* 487 F.Supp. 91 (S.D.N.Y.1980). Al-

---

1. In *Brastex,* the authorization was obtained two weeks before oral argument in the appellate court. *See* N.Y.Civ.Prac. L & R. 6201 Comment C6201:2 (McKinney's 1988 Supp.).

2. A plaintiff must also demonstrate that the amount sought exceeds potential counterclaims. *See Merrill Lynch Futures, Inc. v. Kelly,* 585 F.Supp. 1245 (S.D.N.Y.1984). A review of the

though there are facts in dispute, it appears that plaintiff has met its burden.

China Crown contends that Morandi has not stated allegations with the specificity required to confirm the attachment. Further, China Crown contends that Morandi agreed to shipment on February 8, 1988, and therefore there was no breach of contract. Nevertheless, the documentary evidence demonstrates that the bills of lading purport that the shipments occurred prior to February 8, 1988. Moreover, the first letter of credit states that shipment is to be no later than January 31, 1988 and the second letter of credit recites February 5, as the last date for shipment. By China Crown's own admission, *see* Lan Affidavit ¶ 11, at 6, shipment was made on February 8, 1988. These documents lead to the conclusion that plaintiff will probably succeed on its claims for breach of contract and or fraud. Accordingly, the court finds that the requirements for a prejudgment attachment, *see* CPLR 6212, have been met.

## CONCLUSION

Whereas plaintiff has demonstrated that a basis for attachment under CPLR 6201(1) exists and that it will probably succeed on the merits, plaintiff's motion to confirm the attachment is granted and defendant's motion to vacate the attachment is denied.

complaint and China Crown's counterclaims reveals that the plaintiff seeks more than the total