Charles C. AMES and Nicholas Thorndike, et al., Plaintiffs,

v.

Clark M. CLIFFORD, Paul C. Warnke, Pamela Digby Churchill Harriman, et al., Defendants.

No. 94 Civ. 6712 (JSM).

United States District Court, S.D. New York.

Sept. 27, 1994.

Paul J. Curran, Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiffs.

Charles Stillman, Stillman, Friedman & Shaw, New York City, for Clark M. Clifford.

Roy L. Reardon, Simpson Thacher & Bartlett, New York City, Douglas A. Winthrop, Wilmer, Cutler & Pickering, Washington, DC, for Pamela Digby Churchill Harriman.

MEMORANDUM OPINION AND ORDER

MARTIN, District Judge:

BACKGROUND AND FACTS

On July 26, 1986, Averell Harriman died, leaving numerous descendants and an estate ultimately valued at approximately $65 million. Plaintiffs, trustees of several inter vivos trusts established by Averell Harriman (the "Harriman Trusts") and limited partnerships established for the purpose of investing the Harriman Trusts (the "Harriman Partnerships"), filed this action against defendants, who are present and former trustees of, general partners in and advisors to the Harriman Trusts and Partnerships, seeking recovery of over $30 million in damages. Plaintiffs allege, *inter alia*, that defendants breached their fiduciary duties, were grossly negligent, committed professional malpractice, and violated the terms of the limited partnership agreements and trust instruments. Plaintiffs further allege that certain defendants, including Clark M. Clifford, committed fraud and violated the Racketeer Influenced and Corrupt Organizations Act (RICO).

Currently before the Court is plaintiffs' application by order to show cause for an order of attachment against the New York assets and property belonging to defendants. Pamela Digby Churchill Harriman ("Harriman") and Clark M. Clifford ("Clifford").[1] For the reasons stated below, the application is DENIED.

DISCUSSION

Pursuant to Fed.R.Civ.P. 64, the attachment remedy contained in Section 6201 of New York's Civil Practice Law and Rules ("CPLR") is available to plaintiffs. Section 6201 provides in relevant part:

An order of attachment may be granted in any action ... where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:

1. the defendant is a nondomiciliary residing without the state, ...; or ...

3. the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts ...

1. Both Harriman and Clifford have appeared in this action and have consented to the in person-am jurisdiction of the Court.

N.Y.Civ.Prac.L. & R. § 6201 (McKinney 1983).

Plaintiffs contend that, since it is conceded that Harriman and Clifford are nondomiciliaries, they have satisfied the statutory bases on which the Court may issue a writ of attachment, and they need do no more. Defendants Harriman and Clifford, both of whom have submitted to the jurisdiction of the Court, contend that because attachment is not needed in aid of jurisdiction, it should not be granted unless there is evidence that they have or are about to engage in fraudulent transfers of assets. Since plaintiffs' counsel has, with commendable candor, stated that he is making no claim of fraudulent transfers of assets, the issue presented on this motion is solely one of law.

New York law clearly recognizes that § 6201(1) serves "'two independent purposes: obtaining jurisdiction over and securing judgments against nondomiciliaries residing without the state.'" *Elton Leather Corp. v. First General Resources Co.*, 138 A.D.2d 132, 529 N.Y.S.2d 769, 771 (A.D. 1st Dept. 1988) (quoting *ITC Entertainment, Ltd. v. Nelson Film Partners*, 714 F.2d 217, 220 (2d Cir.1983)). *See also* Joseph M. McLaughlin, *Practice Commentaries* (1983), CPLR § 6201, C6201:2 (McKinney Vol. 7B West Supp.1994) ("[I]t should be emphasized that when the defendant is a nondomiciliary-nonresident or an unlicensed foreign corporation, the attachment serves the additional purpose of giving the plaintiff security.").

Where the defendant is a resident of the state and, therefore, subject to the jurisdiction of the Court, attachment is only permitted upon a showing that the defendant is attempting to dispose of his assets in order to frustrate the ability of the plaintiff to collect any judgment that might ultimately be obtained. Thus, the question presented is whether, simply because the parties who have submitted to the jurisdiction of the Court are nondomiciliaries, their property should be subjected to the harsh remedy of attachment?

If New York law required an affirmative answer to that question, a serious equal protection issue would be presented. *See Jonnet v. Dollar Savings Bank of City of New York*, 530 F.2d 1123, 1142 (3d Cir.1976) (Gibbons, J., concurring). Would it be rational to make attachment available with respect to a nonresident nondomiciliary but not with respect to a nonresident domiciliary?

The issue need not be resolved, however, because New York courts have required an additional showing that something, whether it is a defendant's financial position or past and present conduct, poses a real risk to the enforceability of a future judgment. *See, e.g., General Textile Printing & Processing Corp. v. Expromtorg Internat'l Corp.*, 862 F.Supp. 1070, 1073, 1994 WL 483875, *2 (S.D.N.Y.1994); *Lamprecht v. Comte*, 1994 WL 323580, *1 (S.D.N.Y. July 6, 1994); *Reading & Bates Corp. v. National Iranian Oil Co.*, 478 F.Supp. 724, 726–27 (S.D.N.Y. 1979) ("When jurisdiction already exists, attachment should issue only upon a showing that drastic action is required for security purposes."). For example, in *ITC Entertainment, Ltd. v. Nelson Film Partners*, 714 F.2d 217 (2d Cir.1983), the Second Circuit upheld an order of attachment which had been issued pursuant to § 6201(1) against a defendant who had appeared in the action, submitted to the jurisdiction of the court, and maintained an apartment in New York. In issuing the order of attachment, the lower court had taken into account the defendant's infrequent contacts with New York, the undisputed fact that defendant did not have sufficient assets to satisfy a potential $2.7 million judgment against him, and the court's finding that defendant had at times conducted business "in a less than exemplary manner." *Id.* at 219.

Similarly, in *Elton Leather Corp. v. First General Resources Co.*, 138 A.D.2d 132, 529 N.Y.S.2d 769 (A.D. 1st Dept.1988), the defendants were in serious financial distress according to their filings with the Securities and Exchange Commission, had not made timely payments to two secured creditors, and had violated the provisions of a credit agreement. *Id.* at 770. Further, upon learning of the attachment order against them, defendants had applied to the State of New York for a certificate entitling them to do business in New York, which the First Department found to be an "obvious ploy . . . to

defeat the plaintiff's attempt to recover money allegedly due" and a "sham." *Id.* at 771–72.

Plaintiffs have not sufficiently established that there exists a real threat to their ability to enforce a judgment against Harriman and Clifford and that "drastic action" is required. As noted above, counsel for plaintiffs conceded that there is no evidence of any fraudulent intent on the part of either Clifford or Harriman with respect to their assets in New York.[2] *See* Transcript of Sept. 19, 1994 Hearing, at 5. Nonetheless, plaintiffs contend there exists a real danger that Clifford or Harriman will not be able to satisfy any potential judgment plaintiffs might obtain. The Court will address plaintiffs' arguments regarding Clifford and Harriman separately.

*Clifford*

■ Plaintiffs contend that none of Clifford's assets will be available to satisfy a judgment against him in this action due to the fact that Clifford is also the subject of numerous other civil actions seeking upwards of $100 million in damages. *See* Ames Affidavit ¶ 14. Plaintiffs further contend that there is evidence that Clifford has transferred significant amounts of his assets to his family as gifts in the past and that he loaned $1 million to a plastics firm in which his family has invested. *See* Ames Affidavit ¶ 15.

If plaintiffs' first argument were factually accurate, they would be seeking to utilize the attachment procedure as a means of obtaining priority over other creditors of Clifford. This is simply not the intended purpose of § 6201. Speculation that Clifford may, as a result of the numerous civil actions against him, be in shaky financial condition by the time plaintiffs obtain a judgment against him will not justify an order of attachment. *See The Philatelic Foundation v. Kaplan,* 1986 WL 5629, *5 (S.D.N.Y. May 9, 1986).

Further, the fact that Clifford has transferred assets to family members and channelled funds into family investments, without any evidence from which fraudulent intent or other impropriety may be reasonably inferred, is not enough of a showing to warrant the harsh remedy of attachment. *See Computer Strategies, Inc. v. Commodore Business Machines, Inc.,* 105 A.D.2d 167, 483 N.Y.S.2d 716, 721 (A.D.2d Dept.1984) (mere removal or other disposition of property is not in itself grounds for attachment), *appeal denied,* 110 A.D.2d 743, 488 N.Y.S.2d 616 (1985); *Maitrejean v. Levon Properties Corp.,* 45 A.D.2d 1020, 358 N.Y.S.2d 203, 205 (A.D.2d Dept.1974).

*Harriman*

■ Plaintiffs contend that there is reason to believe that Harriman is presently liquidating her real property assets, giving them away, and transferring them overseas. Plaintiffs allege that several pieces of Harriman's substantial real estate holdings have been sold recently or are up for sale, including Harriman's home in Barbados and two homes in Washington, D.C. *See* Ames Affidavit ¶ 23. Plaintiffs further point to the fact that Harriman has transferred much of her art collection to the United States Embassy in Paris, France and that she has donated a twenty percent interest in an extremely valuable Van Gogh painting from her collection to the National Gallery in Washington, D.C. *See* Ames Affidavit ¶ 24. Plaintiffs further allege that Harriman has expressed interest in purchasing a residence in Paris, *see* Ames Affidavit ¶ 25, suggesting that such an interest is evidence of the need to secure a potential judgment. As further support for their contention that an order of attachment is warranted, plaintiffs also point to statements Harriman purportedly made to several of plaintiffs to the effect that she was in shaky financial condition. *See* Ames Affidavit ¶ 26.

The Court finds plaintiffs' reliance on this evidence to be wholly unpersuasive. Harriman is the United States Ambassador to France and has been residing at the U.S. Embassy in Paris since her appointment. None of the purported "transfers" of assets plaintiffs have highlighted raise any inference of an attempt to evade potential judg-

---

2. Thus, even accepting defendants' assertion, *arguendo,* that plaintiffs are limited to the grounds specified in § 6201(3), plaintiffs have clearly failed to meet their burden of showing "intent to defraud [their] creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff[s'] favor." CPLR § 6201(3).

ments and Harriman has provided reasonable explanations for all of them. *See* Helfer Affidavit ¶¶ 4–7. Given Harriman's status as Ambassador to France, her desire to purchase a residence in France, sell her homes in Washington and transfer much of her valuable art collection to France for purposes of public display at the U.S. Embassy are understandable and, without more evidence, suggest no impropriety justifying attachment. Similarly, there is no evidence suggesting that the motive behind Harriman's gift to the National Gallery was to evade a potential judgment. As stated above, the mere transfer of assets, without some showing of fraudulent intent, will not justify attachment. *See Computer Strategies*, 483 N.Y.S.2d at 721. Moreover, plaintiffs have not produced anything other than hearsay statements that Harriman is in an uncertain financial position. Indeed, it appears that Harriman has assets worth over $30 million and would be more than able to satisfy any judgment plaintiffs may obtain in their favor. *See* Helfer Affidavit ¶ 2.

Finally, Harriman, as a public figure and official of the United States government, with substantial tangible assets in New York, presents little risk of secreting her assets and fleeing the jurisdiction in order to evade a judgment against her. Thus, attachment is not necessary for plaintiffs' security. despite the fact that Harriman is a nondomiciliary. *See Merrill Lynch Futures, Inc. v. Kelly*, 1984 WL 217, *6 (S.D.N.Y. April 19, 1984); *Maitrejean*, 358 N.Y.S.2d at 205 (no attachment warranted where defendant's parent company was "nationally prominent" firm listed on New York Stock Exchange with extensive assets in New York).

The application for an order of attachment is denied.

SO ORDERED.