**BANK OF CHINA, NEW YORK BRANCH, Plaintiff,**

v.

**NBM L.L.C., Yang Mei Corp., C.H.G. Enterprises, Inc., National Budget Merchandise, Inc., Geg International, Inc., Boc Company, Sino–Place Alliance Inc., BHK L.L.C., CBL Ltd. a/k/a CBL Investment Company Grand Cayman, Non–Ferrous BM Corporation, Sinco Trust Ltd. a/k/a Synco Trust, IFB Inter Establishment, Century Ltd., Sunleaf, Inc., Rchfins Inc., Minkang Gu, Shumin Wang, Linda Xiao, Helen Zhou, John Chou a/k/a Qiang Zhou, Sherry Liu a/k/a Sherry Ping Liu, Hui Liu, Dao Zhong Liu, Patrick Young, Beda A. Singenberger and John and Jane Does 1–200, Defendants.**

No. 01 CIV. 0815(DC).

United States District Court, S.D. New York.

March 18, 2002.

Coudert Brothers, By Richard A. De Palma, New York City, for Plaintiff.

Law Offices of Steven L. Kessler, By Steven L. Kessler, Eric M. Wagner, New York City, Alfieri, Frohman & Primoff, LLP, By Paul Frohman, New York City, Jonathan Marks, P.C., New York City, for Defendants.

### *MEMORANDUM DECISION*

CHIN, District Judge.

On March 14, 2001, this Court (Jones, J.) granted plaintiff Bank of China (the "Bank") an *ex parte* order of attachment freezing certain of defendants' assets. Before the Court are the Bank's motion to confirm and certain defendants' cross-motion to vacate the order of attachment. The Bank also moves for a preliminary injunction enjoining defendants from transferring certain property. In addition, certain defendants have filed for relief in a bankruptcy proceeding pending in the District of New Jersey (the "Debtor–

Defendants"). The Debtor–Defendants and the Bank jointly move for a stay of adjudication with respect to the order of attachment as it pertains to the Debtor–Defendants' property in the bankruptcy proceeding. For the reasons set forth below, the Bank's motion to confirm the order of attachment is granted, except as to Debtor–Defendants' property that is the subject of the bankruptcy proceeding in New Jersey, and the cross-motion to vacate the order of attachment is denied. The Bank's motion for a preliminary injunction is granted and the joint motion for a stay of adjudication is also granted.

## BACKGROUND

### A. The Parties

The Bank is organized under the laws of the People's Republic of China and is an instrumentality of the Chinese government. The Bank's New York branch maintains a principal place of business in New York, New York. Defendants are numerous corporate and individual defendants, and with the exception of Xiao and Young, the defendants do not "reside" in the state of New York. Debtor–Defendants are comprised of NBM LLC, John Chou, and Sherry Liu, who have filed for Chapter 11 protection in Bankruptcy Court in the District of New Jersey. Defendants NBM, Non–Ferrous BM, Yang Mei, RCHFINS, John Chou, and Sherry Liu are collectively referred to as the "NBM Defendants," and GEG, BOC, CBL, Shumin Wang, Helen Zhou, Hui Liu, and Dao Zhong Liu are referred to as the "GEG Defendants."

### B. Facts

Beginning in 1991, NBM and the Bank entered into a credit facility that was subsequently enlarged and renewed on a number of occasions. The Bank alleges that the NBM Defendants obtained credit facil-

ities and loans from the Bank by fraudulent means and for fraudulent purposes. According to the Bank, the defendants' fraudulent scheme included borrowing millions of dollars to ostensibly fund letter of credit transactions, while in reality, the defendants were funneling the money to related corporations that could not otherwise obtain credit. The scheme also allegedly included loan repayments funded by proceeds of other loans to purportedly independent entities that were in fact all controlled by John Chou and his family.

The Bank further alleges that in connection with these fraudulent schemes, the defendants forged bills of lading and shipping invoices, subordinated mortgages held by the Bank in properties or attempted to sell the property serving as collateral, and falsely issued personal guarantees to the Bank to induce it to issue further credit to NBM under the credit facility. The Bank also alleges a series of frauds involving certain GEG Defendants, purportedly perpetrated with the aid of others.

### C. Prior Proceedings

The Bank filed the complaint in this action on February 1, 2001, alleging that the defendants defaulted on their contractual loan obligations and conspired in violation of common law and the Racketeer Influenced and Corrupt Organizations Act to defraud the Bank of $34,000,000 in loan proceeds. On March 13, 2001, the Bank moved *ex parte* for an order of attachment pursuant to Fed.R.Civ.P. 64 and N.Y. C.P.L.R. §§ 6201 and 6211(a) (McKinney 1980). On March 14, 2001, Judge Jones granted the Bank's application and ordered an attachment upon any of the defendants' assets in New York. The Bank also obtained similar orders in England and the Cayman Islands.

On March 15, 2001, the Bank posted a $5,000 undertaking as ordered by the Court and delivered copies of the order of attachment to the U.S. Marshal, who subsequently served it upon numerous banks within this district. On March 21, 2001, the Bank filed the instant motion to confirm the attachment order as required by § 6211(b), within the five-day period following levy of attachment by the Marshal. In its notice of motion, the Bank indicated that it knew of only one account that had been attached, a $720,000 account belonging to GEG held at Ka Wah Bank in New York. Several other brokerage accounts, one bank account, and two pieces of real property belonging to defendants have also since been attached.

On or about May 18, 2001, defendants NBM, Yang Mei, Non–Ferrous BM, John Chou, and Sherry Liu moved to vacate the order of attachment, and on May 23, 2001, the Bank filed an amended complaint. Certain defendants cross-moved to dismiss the amended complaint for lack of subject matter jurisdiction. The Bank moved for a preliminary injunction on July 5, 2001.

This case was reassigned to me on August 16, 2001, and on October 4, 2001, I heard arguments on the various motions pending in the case. By memorandum decision dated November 5, 2001, I denied the motions to dismiss, finding the allegations in the amended complaint sufficient to sustain federal question subject matter jurisdiction over the action; I also denied the motion to dismiss certain state law claims for failure to state a claim upon which relief may be granted, without prejudice to renewal by the filing of a summary judgment motion following the completion of discovery. I again heard arguments on November 9, 2001, on the remaining motions to confirm the order of attachment and for a preliminary injunction, and on the cross-motion to vacate

the order of attachment, and reserved decision pending further briefing.

On November 30, 2001, the Bank and the Debtor–Defendants filed a joint motion for a stay of adjudication with respect to the order of attachment as it pertains to the Debtor–Defendants' property in the bankruptcy proceeding. On January 24, 2002, the NBM Defendants filed their answer to the amended complaint and asserted counterclaims.

## DISCUSSION

### A. Motion to Confirm Order of Attachment

 Pursuant to Fed.R.Civ.P. 64, the remedy of attachment is governed by state law. *Chem. Bank v. Haseotes*, 13 F.3d 569, 572 (2d Cir.1994); *Cargill, Inc. v. Sabine Trading & Shipping Co.*, 756 F.2d 224, 227 (2d Cir.1985). To confirm an order of attachment and defeat a cross-motion to vacate under New York law, a plaintiff bears the burden of establishing the grounds for the attachment, the need for continuing the levy, and the probability of success on the merits. *See* C.P.L.R. §§ 6201, 6212, 6223; *Davila Pena v. Morgan*, 149 F.Supp.2d 91, 93 (S.D.N.Y.2001) (citation omitted). The remedy of attachment is recognized to be harsh and extraordinary; therefore, even if a plaintiff satisfies the statutory criteria, the issuance of this relief is discretionary, and the Court must exercise care in its application. *See, e.g., Buy This, Inc. v. MCI Worldcom Communications, Inc.*, 178 F.Supp.2d 380, 384 n. 8 (S.D.N.Y.2001); *Signal Capital Corp. v. Frank*, 895 F.Supp. 62, 64 (S.D.N.Y.1995) (citation omitted).

### 1. Grounds for Attachment

C.P.L.R. § 6201 provides, in relevant part, that an order of attachment "may be granted" in any action in which a money

judgment is sought, where the defendant (1) is a nondomiciliary residing without the state or a foreign corporation not qualified to do business in New York; or (2) with intent to defraud his creditors or frustrate the enforcement of a judgment, has disposed of, encumbered or secreted property, or removed it from the state, or is about to do any of these acts. § 6201. In addition, on a motion for or to confirm an order of attachment, a plaintiff is required to show, by affidavit or other written evidence, that (1) there is a cause of action; (2) it is probable that plaintiff will succeed on the merits; (3) one or more of the § 6201 grounds for attachment exist; and (4) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff. § 6212(a); *see also Bank of Leumi Trust Co. v. Istim, Inc.*, 892 F.Supp. 478, 482 (S.D.N.Y.1995) ("[T]he court must give the plaintiff the benefit of all the legitimate inferences that can be drawn from the facts" when considering the first two requirements.) (citations and internal quotation marks omitted).

By granting the *ex parte* order of attachment, Judge Jones concluded that the Bank had satisfied the requirements of § 6212(a). I agree that the Bank has met the requirements. First, as discussed below and in my decision denying the motions to dismiss, the Bank has established that a cause of action exists, for these purposes. Second, as discussed below, the Bank has submitted sworn testimonial evidence demonstrating that it is likely to succeed on the merits, *see Merrill Lynch,*

*Pierce, Fenner & Smith Inc. v. Baninvensa Capital Markets, Ltd.*, No. 94 Civ. 2778, 1995 WL 380129, at *1 (S.D.N.Y. June 26, 1995) ("The most obvious definition of probable is more likely than not."), and that grounds for the attachment exist under § 6201(3). Finally, in bringing this motion, the Bank also affirmed, in writing, that its demand exceeded all known counterclaims. (De Palma Decl. Supp. Confirm Attach. ¶ 20(b)).[1]

### 2. *Application*

New York's attachment statute is designed to serve twin functions: obtaining jurisdiction over nondomiciliaries and preventing defendants from frustrating judgments by transferring or secreting assets out of New York. C.P.L.R. § 6201(1), (3); *see Elton Leather Corp. v. First Gen. Resources Co.*, 138 A.D.2d 132, 529 N.Y.S.2d 769, 770 (1st Dep't 1988). The Bank claims that it is entitled to an order of attachment on both grounds, because its claim is for a money judgment of $34,000,000 against defendants who are either nondomiciliaries residing outside New York or foreign corporations not qualified to do business in New York, and also because the Bank seeks to prevent the defendants from intentionally frustrating the judgment by disposing of assets.

■ Defendants argue, however, that because they have appeared by counsel in this matter, *in personam* jurisdiction has been established and the *in rem* jurisdic-

---

1. The NBM Defendants filed their answer to the amended complaint and asserted counterclaims on January 24, 2002. Whether these counterclaims exceed the amount demanded by the Bank is immaterial. The Bank has fulfilled § 6212(a) because its demand exceeded all known counterclaims when it brought this motion; further, under § 6201(a), "known" counterclaims has " 'been generally interpreted as meaning over

and above all counterclaims which the plaintiff is willing to concede as just.' " *A.K. Elec. Corp. v. Coleman Cable & Wire Co.*, 39 Misc.2d 731, 242 N.Y.S.2d 76, 77 (N.Y.Sup. Ct.1963) (citations omitted); *Bank of Leumi*, 892 F.Supp. at 482. Moreover, although the recently-filed counterclaims do seek massive amounts in damages, the Bank clearly does not concede that those amounts are "just."

tional justification under § 6201(1) is inapplicable. (NBM Defs.' Mem. Supp. Vacate Attach. at 17). In fact, because defendants have filed pre-answer motions or answers without raising the defense of lack of *in personam* jurisdiction, defendants have waived any objections thereto. *See, e.g., In re Gaming Lottery Sec. Litig. v. Galaxiworld.com Ltd.*, No. 96 Civ. 5567, 2000 WL 1801840, at *5 (S.D.N.Y. Dec.7, 2000) (citation omitted). Hence, the Bank is not entitled to an order of attachment on the first ground because it does not need the attachments to obtain jurisdiction over defendants.

Under New York law, where jurisdiction over a defendant exists and "the only purpose for a pre-judgment attachment is security, a different analysis should apply than that used for jurisdictional attachments." *Reading & Bates Corp. v. Nat'l Iranian Oil Co.*, 478 F.Supp. 724, 726 (S.D.N.Y.1979). In these circumstances, "attachment should issue only upon a showing that *drastic action* is required for security purposes." *Buy This*, 178 F.Supp.2d at 383 (citation and internal quotation marks omitted). Indeed, "New York courts have required an additional showing that something, whether it is a defendant's financial position or past and present conduct, poses a real risk of the enforcement of a future judgment." *Meridien Int'l Bank Ltd. v. Gov't of Republic of Liberia*, No. 92 Civ. 7039, 1996 WL 22338, at *3 (S.D.N.Y. Jan 22, 1996) (citation and internal quotation marks omitted); *see also Ames v. Clifford*, 863 F.Supp. 175, 177 (S.D.N.Y.1994) ("Where the defendant is ... subject to the jurisdiction of the Court, attachment is only permitted upon a showing that the defendant is attempting to dispose of his assets in order to frustrate the ability of the plaintiff to collect any judgment that might ultimately be obtained.").

(a) *Disposition of Assets With Intent to Defraud*

When proceeding under C.P.L.R. § 6201(3), a plaintiff must show that the defendant has disposed of, encumbered or secreted property with the intent to defraud his creditors or frustrate the enforcement of a judgment. § 6201(3). Absent evidentiary facts demonstrating a fraudulent intent, "[t]he possibility that [defendants] will remove all of [their] funds from New York ... is simply too remote to justify continuing the pre-judgment attachment ...." *Reading & Bates Corp.*, 478 F.Supp. at 727. *See also Morin v. Trupin*, 738 F.Supp. 98, 105 (S.D.N.Y. 1990) ("[A]llegations raising a suspicion of intent to defraud is not enough. It must appear that such fraudulent intent really existed in the defendant's mind.") (quoting *Computer Strategies, Inc. v. Commodore Business Machines, Inc.*, 105 A.D.2d 167, 483 N.Y.S.2d 716, 721 (2d Dep't 1984)).

■ Here, the Bank has presented "evidentiary facts" demonstrating that defendants have taken steps to dispose of, transfer, or secrete property, and that they have done so with the intent to defraud. The Bank has relied on more than speculation and conclusory allegations; it has presented concrete evidence showing an intent to defraud on defendants' part sufficient to warrant the harsh remedy of attachment. Those specifics include the following:

CBL, Wang, and Xiao attempted to transfer $1,061,000 to the Cayman Islands by a hypothecation agreement dated July 8, 1998, purportedly signed by a Jeff Hohl on behalf of CBL. (Huang Reply Decl. ¶ 15–16). In the agreement, CBL granted a $1 million security interest in a "deposit" to the Bank, which was to serve as collateral for a debt owed by Yang Mei. (*Id.* ¶ 15). The security interest was deposited

with Po Sang Bank in Hong Kong. Huang Yangxin, Deputy General Manager of the Bank, has noted, however, that Hohl's signature on the hypothecation agreement is markedly different from Hohl's signature on a pledge agreement he allegedly executed on behalf of CBL on May 1, 1998. (*Id.* n. 3). Huang thus reasonably concludes that one or both of Hohl's signatures is forged. (*Id.*). On December 4, 2000, by letter signed by Wang and Xiao, CBL instructed Po Sang Bank to transfer $1,061,000 on maturity on December 7, 2000, to a CBL account with The Royal Bank of Canada in Grand Cayman. (*Id.* ¶ 16). On December 6, 2000, the Bank intervened and informed Po Sang Bank that the funds CBL sought to transfer were subject to the Bank's security interest under the hypothecation agreement. (*Id.* ¶¶ 17–18). The Bank requested Po Sang Bank to remit the funds to the Bank, and when Po Sang Bank remitted the funds in accordance with CBL's instructions, the Bank intercepted and seized the funds. (*Id.* ¶¶ 17–20). If the Bank had not intervened, the collateral would have been transferred to the Cayman Islands.

In 1999, NBM caused the Bank to book fifteen cash loans to GEG, amounting to $8,772,036. (Huang Decl. Opp. GEG Defs. Dismiss ¶ 90; De Palma Suppl. Decl. Supp. Confirm Attach. Ex. D). NBM asserted that the funds were used to pay for goods it purchased from GEG. (De Palma Suppl. Decl. Supp. Confirm Attach ¶ 22). To obtain the proceeds of the loans, GEG presented cargo receipts from a company called IFB Inter Establishment, as evidence of the "transactions" between GEG and NBM. (Huang Decl. Opp. GEG Defs. Dismiss ¶ 90). With each loan, NBM asked the Bank to remit the funds directly to GEG. (De Palma Suppl. Decl. Supp. Confirm Attach ¶ 18). Nearly every time that the Bank complied, on the same day, GEG transferred the funds back to NBM.

(*Id.* ¶ 19). The Bank has since conducted an investigation, and it believes that these "transactions" were shams. (*Id.* ¶ 15). The Bank also believes that IFB Inter Establishment may not actually exist. (Huang Decl. Opp. GEG Defs. Dismiss ¶ 91). These beliefs are not speculative but are supported by concrete evidence.

Chou and Sherry Liu attempted to sell real estate, including two properties in the Cayman Islands and three properties in New Jersey that were used as collateral for loans the Bank extended to NBM. (Huang Reply Decl. ¶¶ 28–29). For example, Chou and Liu own property located at 11 Autumn Terrace in New Jersey, subject to a first mortgage issued by the Bank in the amount of $3 million. (*Id.* ¶ 33). Huang has asserted that Chou and Young, who was the Bank's account officer for NBM at the time, engaged in a fraudulent scheme to subordinate and/or release the Bank's first priority lien. (*Id.* ¶¶ 32–33). Young signed subordination documents on the 11 Autumn Terrace property (*id.* ¶ 35), and the Bank's mortgage on this property was subordinated in favor of a new mortgage defendants obtained from Emigrant Mortgage Company, Inc. (Huang Reply Decl. ¶¶ 33, 35). Defendants obtained a $2 million loan on this mortgage, assigned to Emigrant Savings Bank, and the 11 Autumn Terrace property is currently for sale. (*Id.* ¶¶ 34, 36). The Bank never authorized Young to subordinate its mortgage, and the Bank believes, again for good reason, that Young was acting in concert with the other defendants. (Huang Decl. Supp. Attach. ¶ 6(m)).

The Bank issued a mortgage on property located in East Palisades, New Jersey. (*Id.* ¶ 39). Chou and Liu sold this property on January 18, 2000, allowing the property to be transferred without satisfaction of the Bank's mortgage. (*Id.*). At the closing, Chou and Liu presented a letter

on the Bank's stationary, purportedly fraudulently representing that the letter constituted the Bank's release of the entire mortgage on the property. (*Id.*). The Bank contends that it never authorized the release of its mortgage.

The Bank has determined that several bills of lading NBM provided to the Bank in support of its applications for letters of credit were falsified. (Huang Decl. Opp. Dismiss ¶ 71). Reports from Lloyd's Maritime Information Service and International Maritime Bureau, as well as copies of the bills of lading, show that certain ports of lading were falsified and/or that the named ship did not exist. (*Id.* ¶ 73 & Ex. L). Chou and Liu, on behalf of NBM and Yang Mei, purportedly knowingly submitted false bills of lading, and the Bank, in reliance on those documents, issued payment on various letters of credit and funded "transactions" that had not occurred. (*Id.*).

In addition, after a hearing on June 29, 2001, Judge Jones found that the evidence of the transactions in the case demonstrated that the corporations were continually used as nominees of the individuals. (6/29/01 Hr'g Tr. at 76:19–77:4). Judge Jones also noted specific instances where it was apparent that the "truthfulness" of the transaction, *i.e.*, what was going on behind the transaction, had been hidden through a "network of dealings" among the various corporations. Judge Jones thus declined to lift the attachment at that time.

Defendants attempt to respond to the Bank's allegations. The arguments, however, fail to adequately address the Bank's concrete allegations, and, in any event, they are not persuasive. For example, with regard to the hypothecation agreement dated July 8, 1998, whereby Jeff Hohl on behalf of CBL granted a $1 million security interest in a "deposit" to the Bank (Huang Reply Decl. ¶ 15), defen-

dants do not explain why CBL provided "security" to the Bank and then subsequently attempted to transfer that security to an offshore CBL account. Rather, defendants claim that they deposited the money in the Bank's New York branch and that *the Bank* assigned the funds to its Cayman Branch, as a courtesy, because the Cayman Branch offered higher rates. (Chou Aff. Opp. Confirm Attach. ¶ 28).

This argument is belied by defendants' own evidence. In support of their claims, defendants attach, as an exhibit, a statement for an account held at the Bank. (*Id.* Ex. F). Although the statement refers to an account belonging to Chou, where funds were assigned to an account in the Cayman Islands, the statement is dated September 4, 1992, and actually refers to an account Chou held some eight years earlier. (*Id.* & Ex. F). Further, defendants argue that they do not know Jeff Hohl and did not sign his name on any document. (*Id.* ¶ 30). Yet, again, defendants fail to offer any explanation as to why there are two different signatures for one Jeff Hohl. The absence of an explanation is noteworthy, considering that the two agreements were purportedly signed by Hohl *on behalf of* CBL.

Defendants have also argued that the Cayman Islands and New Jersey properties have been on the market for years, predating the attachment order. (Chou Aff. Opp. Confirm Attach. ¶¶ 26–27). Yet defendants neglect to adequately address the Bank's claim that they wrongfully subordinated the Bank's mortgage. Defendants evade this issue, arguing thinly that there is "no explanation" for how a valid security interest could have been released, and that the likelihood of any Bank employee doing anything without authorization is "virtually zero." (Chou Aff. Supp. Dismiss ¶¶ 65–66). The fact is, according to the Bank, Young abused his position as

an employee of the Bank by conspiring with the other defendants to subordinate the Bank's interest so that defendants would obtain an additional $2 million from another source. Finally, defendants fail to adequately respond to the Bank's allegation that defendants falsified bills of lading. Instead, they assert that NBM never warranted the validity of the bills of lading to the Bank, and that any inaccuracies—which are a "very common occurrence in the real world"—could not damage the Bank. (*Id.* ¶ 58).

Defendants' responses are insufficient to credibly refute the Bank's detailed and factually grounded allegations that defendants have acted with an intent to defraud. Based on all the evidence before the Court, including evidence of defendants' past and present conduct, I conclude that the Bank has presented sufficient evidence to show that defendants, with intent to defraud, have attempted to "dispose of [their] assets in order to frustrate the ability of the plaintiff to collect any judgment that might ultimately be obtained." *Ames*, 863 F.Supp. at 177. Of course, the Bank must prove these allegations at trial, but for now I conclude that the Bank has established that defendants' conduct "poses a real risk of the enforceability of a future judgment." *Id.* Accordingly, the Bank's motion to confirm the attachment is granted.

### B. *Motion for a Preliminary Injunction*

The Bank also moves for a preliminary injunction pursuant to Fed.R.Civ.P. 65,

preventing defendants from "withdrawing, transferring or otherwise disposing" of assets located in the state of New Jersey. Specifically, the Bank seeks a preliminary injunction with regard to defendants' accounts at Fidelity Brokerage Services, LLC and Fidelity Service Company, Inc. ("Fidelity"), and Summit Bank. (Pl. Mem. Supp. Prelim. Inj. at 3). The Bank acknowledges that it is permitted to move for a preliminary injunction only as to assets that may later be determined to be beyond the scope of the order of attachment. (De Palma Reply Decl. ¶ 28). For the reasons that follow, the motion is granted.[2]

■ To justify the issuance of a preliminary injunction, the movant bears the burden of proving: (1) absent injunctive relief, it is likely to suffer irreparable injury; and (2) either it is likely to succeed on the merits, or there are "sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir.1999); *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir.1995). Further, although injuries compensable by monetary damages ordinarily do not justify the remedy, " '[a] preliminary injunction may issue to preserve assets as security for a potential monetary judgment where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible.' " *Pashaian v. Ec-*

2. Both the Bank and the NBM Defendants agree that the order of attachment does not implicate the Summit Bank account. (6/29/01 Hr'g Tr. at 7:14–8:2). As fully explained in my memorandum decision in the related interpleader action, *Fidelity Brokerage Services, LLC v. Bank of China, et al.,* No. 01 Civ. 4024(DC), Fidelity has been directed to deposit all assets restrained under the attach-

ment order in this case with the Clerk of the Court. Therefore, even if the Fidelity accounts are in fact beyond the scope of the attachment order, defendants are nonetheless enjoined from transferring or otherwise disposing of these assets by the preliminary injunction to be issued in accordance with this decision.

**192**

*celston Properties, Ltd.,* 88 F.3d 77, 86–87 (2d Cir.1996) (citations omitted).

 The Bank has met its burden. As discussed at length above, the Bank has presented concrete evidence that the defendants attempted to "assign, encumber, secrete or remove property from the state" with the intent to defraud the Bank. Thus, the Bank has demonstrated that it is likely to suffer irreparable injury in the absence of relief. In addition, I have also concluded that the Bank has demonstrated probable success on the merits. Accordingly, the Bank's motion for a preliminary injunction with regard to the New Jersey assets is granted.

### C. *Joint Motion for Stay of Adjudication*

The Bank, along with "debtor-defendants" NBM, John Chou, and Sherry Liu, jointly move for a stay of adjudication with respect to the order of attachment as it pertains to property of the debtor-defendants in a bankruptcy proceeding pending in the district of New Jersey. The motion is granted.

### *CONCLUSION*

For the reasons set forth below, the Bank's motion to confirm the order of attachment is granted, except as to Debtor–Defendants' property that is the subject of the bankruptcy proceeding in New Jersey, and the cross-motion to vacate the order of attachment is denied. The Bank's motion for a preliminary injunction is granted and the joint motion for a stay of adjudication is also granted. The Bank shall submit an order, on notice, within five business days hereof.

Because the Court has continued the restraint on defendants' assets by this decision, and because the Court recognizes the burden the continuation of the restraint may place on defendants, the case is hereby set down for trial on June 17, 2002. The parties shall appear for a pretrial conference on April 19, 2002 at 2 p.m.

SO ORDERED.