[891 NYS2d 622]

In the Matter of SOJITZ CORPORATION, Petitioner, v PRITHVI INFORMATION SOLUTIONS LTD., Respondent.

Supreme Court, New York County, December 2, 2009

APPEARANCES OF COUNSEL

*Lovells LLP*, New York City (*Andrew M. Behrman* and *Matthew J. Galvin* of counsel), for petitioner. *DLA Piper LLP*, New York City (*James P. Duffy IV* of counsel), for respondent.

### OPINION OF THE COURT

JAMES A. YATES, J.

May a creditor attach assets in New York, for security purposes, in anticipation of an award in arbitration commenced in a foreign jurisdiction when there is no contact with, or connection to, New York by way of subject matter or personal jurisdiction?

## Background

Petitioner Sojitz Corporation is a Japanese company with its principal place of business in Tokyo. Respondent Prithvi Information Solutions Ltd. is a company organized under the laws of India and has its principal place of business in Hyderabad, India. There is no claim that either party regularly engages in business, or has transacted business in connection with the present case, in New York State.

On November 29, 2007, Sojitz and Prithvi entered into a contract in Delhi, India, whereby Sojitz agreed to provide telecommunications equipment produced in China to Prithvi in India. In return, Prithvi would make payments into an escrow account located at the Punjab National Bank in India. After Prithvi made payments into the escrow account, Sojitz was to withdraw the funds to its account in Japan.

The contract also contains choice of law and arbitration clauses. Those clauses provide that the contract is governed by the laws of England, and any disputes arising "out of or in connection with or in relation to" the contract would be settled by arbitration in Singapore.

Pursuant to the contract, Sojitz shipped and delivered equipment to Prithvi over a five-month period, from January 16 to June 18, 2008. Upon each shipment of the goods, Sojitz issued invoices along with bills of exchange to Prithvi. Prithvi accepted delivery of all goods without complaint. The total price of the goods invoiced by Sojitz was $47,483,106.93. On March 15, 2009, the final payment from Prithvi became due under the contract.

Sojitz claims that to date, Sojitz has only received from Prithvi a sum of JPY 535,860,058 (approximately US $5.6 million). They argue that payments intended for the escrow account were diverted away by Prithvi (transcript, Sept. 17, 2009, at 38-39). Allegedly, Prithvi admitted to Sojitz that it wanted to use the money for "other things" because they had "cash flow problems." (Transcript, Sept. 10, 2009, at 76). In addition, Sojitz alleges that Prithvi owes unbundled interest under article VI (d) of the contract, which amounts to JPY 41,493,547 (approximately US $450,000), plus delayed interest in accordance with article VI (p) of the contract, which amounts to JPY 85,688,540 (approximately US $900,000) as of July 22, 2009. Accordingly, as of July 22, 2009, Prithvi owes Sojitz a total sum of JPY 4,601,830,481 (approximately US $48.4 million).

On August 13, 2009, Sojitz moved ex parte for an order of attachment against Prithvi for $40 million in this court (verified petition for order of attachment without notice in aid of arbitration, Aug. 13, 2009). The court granted the motion for an order of attachment for $40 million, and also ordered Sojitz to post a $2 million bond (order of attachment without notice in aid of arbitration, Aug. 13, 2009). On August 25, 2009, pursuant to CPLR 6220, Sojitz moved to compel disclosure to aid in the attachment order and to confirm the attachment. Subsequently, after appearance by Prithvi, on October 16, 2009, the order was vacated. Sojitz has attached an accounts receivable from an unrelated party—a debt owed to Prithvi by a New York domiciliary—in the amount of $18,000 and now moves to confirm that attachment.

On August 27, 2009, Sojitz commenced the underlying arbitration against Prithvi in Singapore as required by the terms of their agreement (affidavit of Galvin, Sept. 9, 2009, ¶ 15). As the parties are foreign corporations, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (21 UST 2517, TIAS No. 6997 [1958] [UN Convention, also called the New York Convention]; 9 USC § 201) controls the terms of the arbitration.[1] Prithvi opposes confirmation and opposes the disclosure request.

---

1. "Since the parties herein have selected arbitration as the forum in which to resolve their controversies and the instant controversy involves international commerce, the UN Convention is applicable" (*Shah v Eastern Silk Indus.*, 112 AD2d 870, 871 [1st Dept 1985]). The United States, the United Kingdom, Singapore, and India are all signatories to the Convention.

## Discussion

### A. Attachment Generally

"An order of attachment is a device whereby a plaintiff effects a seizure of a defendant's property, with the sheriff taking constructive and sometimes actual hold of it under the terms of the order" (*Heller v Frota Oceanica E Amazonica, S.A.*, 18 Misc 3d 1103[A], 2007 NY Slip Op 52378[U], *4 [Sup Ct, Kings County 2007]). A debt owed to the defendant is property which may be attached (CPLR 6202).

Under CPLR 6201, a plaintiff must meet two requirements for an order of attachment. First, plaintiff's demand must be for a money judgment. Second, the plaintiff must satisfy one of the five numbered subdivisions of CPLR 6201. Subdivision (1) of that section permits attachment, as in the current situation, when "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state" (CPLR 6201 [1]).

Attachment may be used in aid of arbitration proceedings as well as judicial proceedings. Notwithstanding the availability of attachment as a provisional remedy in cases of domestic arbitration, in *Cooper v Ateliers de la Motobecane* (57 NY2d 408 [1982]), the Court of Appeals had determined that the UN Convention did not specifically authorize the use of a provisional remedy such as attachment prior to issuance of an award. As such the Court held that attachment in aid of arbitration under the UN Convention was not available. On the other hand, a panel of the Second Circuit Court of Appeals subsequently interpreted the federal treaty to permit injunctive relief (*Borden, Inc. v Meiji Milk Prods. Co., Ltd.*, 919 F2d 822, 826 [2d Cir 1990], *cert denied* 500 US 953 [1991]). In 2005, the Legislature, apparently agreeing with the Circuit Court reading of the treaty, amended section 7502 of the CPLR to permit injunctive relief regardless of whether the arbitration is governed by the UN Convention (L 2005, ch 703 [eff Oct. 4, 2005]). CPLR 7502 (c) now reads in pertinent part:

> "The supreme court . . . may entertain an application for an order of attachment . . . in connection with an *arbitration that is pending or that is to be commenced inside or outside this state, whether or not it is subject to the United Nations convention on the recognition and enforcement of foreign arbitral awards*, but only upon the ground that the award to which the applicant may be entitled may be rendered

ineffectual without such provisional relief. The provisions of articles 62 and 63 of this chapter shall apply to the application, including those relating to undertakings and to the time for commencement of an action (arbitration shall be deemed an action for this purpose), except that the sole ground for the granting of the remedy shall be as stated above." (CPLR 7502 [c] [emphasis indicating added language in 2005 amendment].)

After the amendment to section 7502 and following the *Borden* decision, courts have recognized that provisional remedies are available in support of pending arbitration under the UN Convention. Since the availability of provisional relief is a matter of federal treaty interpretation, unless the United States Supreme Court overrules *Borden*, provisional relief can now be sought in aid of arbitration under the UN Convention (*see* Alexander, 2006 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, 2009 Pocket Part, CPLR C7502:6 ["(I)t is noteworthy that the amendment, in effect, constitutes the New York legislature's interpretation of one aspect of a body of federal law—the convention—that the U.S. Supreme Court has not yet passed upon"]; *see also Alvenus Shipping Co., Ltd. v Delta Petroleum [U.S.A.] Ltd.*, 876 F Supp 482, 487 [SD NY 1994] [permitting attachment as provisional remedy in aid of foreign arbitration]).

As stated in *Gerling Global Reins. Corp. v Sompo Japan Ins. Co.* (348 F Supp 2d 102, 105 [SD NY 2004]):

"There is one very narrow exception to the jurisdictional limit [of the Convention], but the exception concerns only the issuance of provisional remedies to ensure that an arbitration panel can afford meaningful relief. For example, in *Venconsul* the court held that it had subject matter jurisdiction pursuant to the Convention over a motion for a preliminary injunction; in that case, however, jurisdiction existed because an arbitration proceeding was already pending and exercising jurisdiction over the motion for a preliminary injunction would help 'preserve the possibility of recoveries upon [arbitral] awards.' " ([Citations omitted], citing *Venconsul N.V. v TIM Intl N.V.*, 2003 WL 21804833, *3, 2003 US Dist LEXIS 13594, *8 [SD NY 2003]; *China Natl. Metal Prods. Import/Export Co. v Apex Digital, Inc.*, 155 F

Supp 2d 1174 [CD Cal 2001].)

The amended statute provides that the sole ground to be considered in a case covered by CPLR 7502 (c) is whether a later award would be rendered ineffectual without provisional relief. Thus, without more, a nondomiciliary attachment in aid of arbitration is permissible, once the "ineffectual" requirement of CPLR 7502 (c) is met. On the other hand, for domiciliaries, CPLR 6201 (3) requires demonstration that: "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." (CPLR 6201 [3].)

One recent writer opines:

> "Is it not odd that plaintiffs can basically get prejudgment security interests in the assets of foreign defendants, even though it no longer serves any jurisdictional purpose? With regard to domiciliaries, the plaintiff must first prove the defendant is a crook. *See* N.Y. CPLR 6201 (4) [*sic*] (McKinney 2008). Therefore, CPLR 6201 equates crooks and foreigners . . .
>
> "A line of cases . . . holds that courts have discretion to deny orders of attachment against non-domiciliaries who pose no risk of failing to pay a judgment. In *Ames v. Clifford*, 863 F Supp 175, 177 (S.D.N.Y. 1994), the court stated that 'New York courts have required an additional showing that something, whether it is a defendant's financial position or past and present conduct, poses a real risk to the enforceability of a future judgment.' *Id.* The court went so far as to suggest that, in the absence of such discretion, New York law might violate the constitutional right of non-domiciliaries to equal protection of the laws. *See id.* (citing *Jonnet v. Dollar Sav. Bank of N.Y.*, 530 F2d 1123, 1142 (3d Cir. 1976) (Gibbons, J., concurring)); *see also Thornapple Assocs. v. Sahagen*, No. 06 Civ. 6412 (JFK), 2007 US Dist. LEXIS 17370, at *17-18 (S.D.N.Y. Mar. 12, 2007); *Elliott Assocs., L.P. v. Republic of Peru*, 948 F Supp 1203, 1211 (S.D.N.Y. 1996) (citing *Incontrade, Inc. v. Oilborn Int'l, S.A.*, 407 F. Supp 1359, 1361 (S.D.N.Y. 1976)); *Reading & Bates Corp. v. Nat'l Iranian Oil Co.*, 478 F Supp 724, 727 (S.D.N.Y. 1979)

(quoting Incontrade, 407 F Supp at 1361); *Maitrejean v. Levon Props. Corp.*, 45 AD2d 1020, 1020-21, 358 NYS2d 203, 205 (2d Dep't 1974) (reversing supreme court for granting a lien against a foreign corporation, where corporation was highly liquid)."
(David Gray Carlson, *Critique of Money Judgment [Part Two: Liens on New York Personal Property]*, 83 St John's L Rev 43, 105 n 385 [2009].)

However, the statute, CPLR 7502 (c), may well survive the suggested equal protection challenge since it requires a demonstration that the award may be rendered ineffectual without provisional relief. In most fact situations as a practical matter, this is not fundamentally different from the traditional application of subdivision (3) ("intent to defraud . . . or frustrate enforcement") or the requirement of "irreparable harm" (CPLR 6201 [3]; *Matter of Hill v Reynolds*, 187 AD2d 299, 300-301 [1st Dept 1992]) in cases brought against domiciliaries.

In the case before the court, Sojitz has alleged and documented that Prithvi diverted funds without explanation from an escrow account held for Sojitz's benefit and that a criminal complaint, alleging fraud by Prithvi, has been lodged in India. These uncontested allegations are sufficient to justify confirmation of the attachment of the $18,000 asset in the present case.

Accordingly, in the case before the court, Sojitz meets the requirements of CPLR 7502 and 6201.

## B. Due Process: Attachment for Security Purposes Only

New York courts have long recognized that its "nonresident attachment statute is designed to serve two independent purposes: obtaining jurisdiction over and securing judgments against nondomiciliaries residing without the state" (*ITC Entertainment, Ltd. v Nelson Film Partners*, 714 F2d 217, 220 [2d Cir 1983]; *see also Ames v Clifford*, 863 F Supp 175, 177 [SD NY 1994]). Arbitration of the contract claims in this case has commenced in Singapore. Sojitz does not seek to litigate the merits of its claims in New York. Sojitz merely seeks attachment for security to preserve assets that would not otherwise be available if it prevails in Singapore. Sojitz contends that so long as the "res" is within the court's jurisdiction, the court may confirm the order of attachment when issued solely for security purposes (*see* petitioner's mem of law, Sept. 9, 2009, at 7). The situs of an intangible asset, such as a debt, is the domicile of the debtor or garnishee (*Hotel 71 Mezz Lender LLC v Falor*, 58 AD3d 270, 273 [1st Dept 2008]).

> "It is long settled in New York that the fundamental rule in attachment proceedings is that the res must be within the jurisdiction of the court issuing the process in order to confer jurisdiction . . .[A]n attachment of a debt or other intangible property can . . . be effected as against the debtor or obligor by service upon him or her when he or she is domiciled within the state." (*Id.* [internal quotation marks omitted].)

The situs of a debt for attachment purposes is "the location of the party of whom performance is required by the terms of the contract" (*ABKCO Indus. v Apple Films*, 39 NY2d 670, 675 [1976]). In this case, it is not contested that the account seized is a debt owed by a New York domiciliary to respondent Prithvi.

Prithvi argues that a New York court needs personal jurisdiction over, or a demonstration of some minimum level of contact with, New York State before it may grant an order of attachment even where the attachment is sought solely for security purposes (*see* respondent's mem of law, Sept. 4, 2009, at 1).

Prithvi argues that, in *Shaffer v Heitner* (433 US 186, 212 [1977]), the United States Supreme Court rejected its previous rule that the mere presence of property within a state gave that state jurisdiction to enter a valid judgment against the property's owner. Prithvi maintains that, as a matter of due process and as a result of *Shaffer*, some minimal level of contact between the respondent or the transaction in question is needed before assets in New York may be seized to secure a foreign judgment. However, in *Shaffer*, "the express purpose of the [state's] sequestration procedure [was] to compel the defendant to enter a personal appearance" (*id.* at 209). Significantly, the court was careful to point out that, while mere presence of property

> "does [not] support jurisdiction to adjudicate the underlying claim . . . a State in which property is located should have jurisdiction to attach that property, by use of proper procedures, as security for a judgment being sought in a forum where the litigation can be maintained consistently with *International Shoe*. Moreover, we know of nothing to justify the assumption that a debtor can avoid paying his obligations by removing his property to a State in which his creditor cannot obtain personal jurisdiction over him." (*Id.* at 210 [citations omitted].)

As suggested by Prithvi, proof of minimum contacts in a case of foreign arbitration was recently required in *Sole Resort, S.A.*

*de C.V. v Allure Resorts Mgt., LLC* (450 F3d 100, 101 [2d Cir 2006]). There, foreign corporate litigants conducted arbitration in Florida. Subsequently the Court of Appeals, Second Circuit permitted one of the parties to move to vacate the Florida award in New York but conditioned upon a finding on remand by the District Court of minimum contacts with New York. However, the present case is readily distinguishable since the action in *Sole* attacked the underlying arbitration award and contract claim on the merits. In order to commence litigation against a defendant in New York due process required some level of contact between the defendant and the forum state. Here, neither party seeks to litigate the claims or the validity of an award in this state and personal jurisdiction should not be an issue.

Recently, in *Shipping Corp. of India Ltd. v Jaldhi Overseas Pte Ltd.* (585 F3d 58, 66-71 [2d Cir 2009]), the Second Circuit revisited the issue of attachment in international arbitration in the context of maritime law. Not dissimilar to the facts here, *Shipping Corp.* was "based on a dispute between a company incorporated in India and a company incorporated in Singapore . . . [and] the dispute was to be arbitrated in England" (*id.* at 60). In *Shipping Corp.*, the District Court vacated plaintiff's ex parte attachment of electronic fund transfers (EFTs)[2] in the temporary possession of an intermediary bank in New York, and the Second Circuit affirmed (*see id.* at 71).

In *Shipping Corp.*, the Second Circuit focused on the nature of the property that the plaintiff sought to attach, while assuming that New York assets of a defendant could be seized, in maritime cases and consistent with due process, for security purposes. The problem for the court in *Shipping Corp.* was

---

**2.** "An EFT is nothing other than an instruction to transfer funds from one account to another . . . To more concretely illustrate the circumstances of the instant case, consider the following example: ABC Shipping wants to transfer $100 to XYZ Overseas. ABC has an account at India National Bank, and XYZ has an account at Bank of Thailand. India National Bank and Bank of Thailand do not belong to the same consortium, but each has an account at New York Bank. To begin the transfer, ABC instructs India National Bank to transfer $100 to XYZ's account at Bank of Thailand. India National Bank then debits ABC's account and forwards the instruction to New York Bank. New York Bank then debits India National's account and credits Bank of Thailand's account. Bank of Thailand then credits XYZ's account, thereby completing the transfer." (*Shipping Corp. of India Ltd. v Jaldhi Overseas Pte Ltd.*, 585 F3d 58, 61 n 1 [2d Cir 2009].)

that the EFTs were not property of the defendant. The Second Circuit noted that on this issue,

"New York State does not permit attachment of EFTs that are in the possession of an intermediary bank . . . [T]he New York Uniform Commercial Code states that a beneficiary has no property interest in an EFT because 'until the funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary, the beneficiary has no property interest in the funds transfer which the beneficiary's creditor can reach' . . . New York law establish[es] that EFTs are neither the property of the originator nor the beneficiary while briefly in the possession of an intermediary bank." (*Id.* at 70-71, citing *European Am. Bank v Bank of Nova Scotia*, 12 AD3d 189 [1st Dept 2004] [noting that attachments served on intermediary banks cannot be enforced].)

The net effect of *Shipping Corp.* was to bring federal law governing maritime seizures in line with New York law in nonmaritime cases: assets, whether tangible or intangible may be seized for security, but EFTs are not property of the defendant.

Pursuant to CPLR 7502, 6201, and the relevant case law, this court holds that pre-award attachments in international arbitration cases are proper against ascertainable property, including but not limited to debts owed to respondent by its obligors domiciled within the State of New York.

## Conclusion

For the reasons stated above, the attachment is confirmed. (*See* order, Oct. 16, 2009.)